## Elizabeth McGovern

### v.

### The Union Mutual Life Insurance Company.

109 151
134 297

*Filed at Ottawa November 20, 1883.*

1. SALE UNDER TRUST DEED—*whether made at the time appointed in the notice—as to the fraction of an hour.* Under the power given the trustee in a deed of trust, he advertised the property named in the deed, for sale, and in the notice appointed "the hour of eleven o'clock" of a certain day as the time at which the sale would be made. The sale was not made at eleven o'clock, but was made between half-past eleven and twelve o'clock of the day named. This was in apt time, under the notice. For the purposes of the notice, and the sale, it was to be considered eleven o'clock until it was twelve o'clock, and the sale might properly be made at any time between eleven and twelve o'clock.

2. USURY—*what constitutes—interest upon interest.* The maker of a note sought an extension of time for payment. In computing the amount then due, the interest, which was past due upon the note, was added to the principal, and a new note given for the aggregate amount thus ascertained, and which was to bear interest. This was not usurious. The interest past due upon the old note might well become a part of the principal of the new note, and as such it might properly bear interest.

3. SAME—*commissions.* In negotiating a loan of money, one of the persons connected with the transaction charged the borrower three per cent commissions for procuring the loan. The borrower claimed that this three per cent so reserved as commissions was in reality but a part of the interest upon the loan, and that the transaction was usurious. At the time of the loan, interest was allowed to be contracted for at the rate of ten per cent per annum. The loan was made at nine per cent, and for three years,—so that, if the three per cent retained as commissions was really interest, it would be at the rate of only one per cent per annum during the time of the loan, which, added to nine per cent, (the rate expressly reserved,) would not exceed the rate allowed by law to be reserved—that is, ten per cent—so the transaction was not usurious on that ground.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

Mr. S. K. Dow, and Mr. J. BURNHAM, for the plaintiff in error.

Messrs. Swett, Haskell & Grosscup, for the defendant in error.

Mr. Justice Craig delivered the opinion of the Court:

This was a bill brought by Elizabeth McGovern, in the circuit court of Cook county, against the Union Mutual Life Insurance Company, to set aside two sales made by L. D. Boone, trustee, under the power contained in two certain trust deeds, which had been executed by the complainant to secure the payment of certain promissory notes due the defendant. The cause proceeded to a hearing on bill, answer, replication and proofs, and the court rendered a decree dismissing the bill, and the complainant sued out this writ of error.

The property involved consists of certain houses and lots on Adams and Desplaines streets, in Chicago, and fifty-six acres of land fronting on Fifty-fifth street boulevard, usually known as the "Boulevard property." In 1873 the property was incumbered by two trust deeds, of $7500 each, which complainant had given to the defendant, and also a trust deed for some $5000, which John L. Walsh, a former owner, had placed on the property. The interest had not been paid on these claims for near two years, and there were also about two years' back taxes due, so that the claim of the defendant amounted in the aggregate to something over $23,000. The complainant, for the purpose of paying off the indebtedness, made sale of a portion of the "Boulevard property" to one Weston. A contract in writing was executed, and $500 was paid in cash on the purchase, but when the abstract was brought down it appeared that one R. K. Turner was the owner of the property. The title of Turner, however, was regarded by many as a forgery, but the purchaser refused to consummate his purchase while the title remained of record in Turner. This trade was therefore abandoned, and the complainant then applied to the defendant to negotiate a

loan which would liquidate all claims on the property.    After some negotiation an arrangement was made, the result of which was, complainant, on June 26, 1873, executed and delivered to the defendant a deed of trust on all the property, to secure the sum of $43,000.    The items which• made up the sum of $43,000 are as follows:

| | |
|---|---|
| Loan dated September 25, 1867, - - - | $7,500.00 |
| Interest and deferred interest, - - - | 1,452.00 |
| Loan to Walsh, August 18, 1868, - - - | 5,000.00 |
| Interest and deferred interest on same, - - | 793.20 |
| Loan dated May 8, 1871, - - - - | 7,500.00 |
| Interest and deferred interest on same, - - | 1,386.00 |
| Insurance advanced September, 1872, - - | 73.50 |
| Interest on same, - - - - - | 5.50 |
| Paid Weston for contract, - - - - | 500.00 |
| Paid Mrs. Roe, two notes, - - - - | 420.00 |
| Interest on same, - - - - - - | 42.00 |
| Paid for recording trust deed, $2.50; three release deeds, $1.50; recording Turner's deed, 80 cents, - - - - - - | 4.80 |
| Paid Turner for his title, - - - - | 15,000.00 |
| Paid Park tax check, - - - - | 1,030.00 |
| Commissions on this loan, - - - - | 1,290.00 |
| Check, July 7, to balance, - - - - | 1,003.00 |
| Total, - - - - - - - | $43,000.00 |

On the 14th day of July, 1877, in default of payment, all the property embraced in the deed of trust was sold at public vendue, under the power contained therein, and purchased by the defendant.

The two main grounds relied upon to defeat the sale made under the deed of trust are:    First, that the $15,000 advanced to Turner for his title, and included in the mortgage, was not authorized by the complainant, and when she executed the deed of trust she was not aware of the fact that it

was embraced therein; second, the sale under the trust deed was void, because not made at the time specified in the published notice. These are the principal points relied upon, as we understand the record, to defeat the title acquired by the defendant by virtue of the sale under the deed of trust.

The fact that complainant executed the notes for $43,000 is not denied, nor is there any controversy in regard to the fact that complainant executed and acknowledged the deed of trust which was given to secure the payment of the $43,000. The complainant testified that she did not consent to any trade with Turner, and did not authorize any one to purchase the Turner title, and never assented to paying anything for it. But she was not corroborated by the other evidence in the case. Mr. Boone, who was the agent for the life insurance company, negotiated the loan. He says that he and the complainant called on Mr. Sleeper, and consulted him in regard to the Turner title; that the matter was fully investigated, and it was determined, after mature deliberation, to buy the Turner title. Sleeper was called as a witness. He says the complainant and Boone called on him several times in regard to the Turner title, and the matter was fully considered, and it was finally determined by all of them to buy the title. In addition to this, the complainant admitted, in her cross-examination, that a short time after the deed of trust was executed she learned that it was given for $43,000. But after she obtained this information she never called on Boone for the balance of the money represented by the deed of trust, and due her, which was $15,000, if the Turner claim was not to be purchased with a part of the money she obtained from Boone. This conduct on her part can not well be reconciled with the theory that she did not assent to the purchase of the Turner title. She knew the amount of the deed of trust which she had given on her land. She knew that the amount of the incumbrances on her property which the life insurance company agreed to pay and discharge

amounted to only about the sum of $28,000. Now, if the insurance company was not authorized to purchase the Turner title, why is it that she failed to call for the balance of the money she had loaned, of the company, which she had given a mortgage to secure? The complainant is a person of ordinary intelligence, and if this Turner purchase was not understood or authorized by her, she never would have consented that Boone should keep $15,000 of. her money for nothing. This is too unreasonable to believe for a moment.

We now come to the question whether the sale occurred at the time appointed in the notice. The advertisement of the sale gave notice that the property would be sold "at the hour of eleven o'clock," but the sale did not occur until between half-past eleven and twelve o'clock, and it is claimed that under the notice the trustee was bound to sell the property at eleven o'clock sharp. We do not concur in that view. The law does not recognize fractions of an hour or fractions of a day, and when a notice says that a sale of land will be made at the hour of eleven o'clock, the practical common sense of the language used is, that the sale will be made during the hour of eleven, or between eleven and twelve o'clock. This is upon the ground that eleven o'clock means from eleven until twelve,—in other words, it is eleven o'clock from eleven to twelve. It would have been impossible for the trustee to have made this sale precisely at eleven o'clock. That is but an instant, and before the trustee could have read two lines of the advertisement the time would have been gone. The law does not expect or require impossible things, and a moment's reflection is enough to convince any reasonable person that the trustee, under this notice, was not required to appear and sell precisely at eleven o'clock, but the notice gave him the right to appear at any time during the hour and make the sale.

It is also said that the transaction was usurious. We do not so understand it. The fact that the life insurance com-

pany computed the amount due it from the complainant in the different mortgages, and took a new note and mortgage for this amount thus due, with interest, which was added to the amount of money advanced, and made up the $43,000, did not render the transaction usurious. When interest upon a note is past due, no reason is perceived which will prevent the holder from taking a new note from the debtor for principal and interest, and make this sum bear the legal rate of interest. Such a transaction is in all respects legitimate.

It appears, from the evidence, that Boone charged the complainant three per cent commissions for procuring the loan of $43,000 from the life insurance company, making the sum of $1290, and it is claimed that this rendered the contract usurious. When this loan was made the legal rate of interest was ten per cent per annum when the contract provided for this amount. The loan in this case was for three years, at nine per cent interest. Now, the three per cent commissions only amounted to one per cent per annum, so that if the commissions are regarded as interest, and added to the interest at nine per cent, provided for in the note, the rate would still be only ten per cent, and not usurious.

It is also claimed that Boone wrongfully failed to record the release of the Walsh trust deed, but subsequently advertised and sold the property in payment of it. We do not regard it necessary to inquire whether the sale under the Walsh deed of trust was authorized or not. If the sale under the $43,000 trust deed was valid, as we have seen it was, all the title complainant had in the property passed under that sale, and it in no manner concerns her whether the sale under the Walsh deed of trust was proper or not, and as no one else is complaining, it will not be necessary to enter upon the discussion of the question.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*