FILIPPO PATTAVINA, APPELLEE, v. JULIO PIGNOTTI, APPELLANT, IMPLEADED WITH WILMER D. BASS, APPELLEE. JULIO PIGNOTTI, APPELLANT, v. FILIPPO PATTAVINA, APPELLEE.

128 N. W. 2d 817

Filed May 29, 1964. No. 35652.

Larry E. Welch and Joseph H. McGroarty, for appellant.

Samuel P. Caniglia, Ross F. Caniglia, and Robert C. Fisk, for appellee Pattavina.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

CARTER, J.

The present appeal involves two cases that were consolidated for trial in the district court. The first case was a suit to foreclose certain notes and real estate mortgages executed in favor of Filippo Pattavina by Julio and Vincenza Pignotti, husband and wife. The answer pleaded usury as a defense. The second case was a suit by Julio Pignotti against Filippo Pattavina alleging that the notes and mortgages were usurious and praying for a reformation thereof to show the true amount of money loaned and the elimination of the interest provisions contained therein. The trial court found that the notes were not usurious, directed the foreclosure of the mortgages, and denied relief to Pignotti in his suit for the reformation of the notes and mortgages. Julio Pignotti appeals from the judgments entered in each of the foregoing cases.

The evidence shows that on June 10, 1952, Julio and Vincenza Pignotti executed and delivered a note and real estate mortgage to Pattavina in the amount of $3,800 with interest at 5½ percent per annum, payable $40 a month. They received $3,719.25, the same being $3,800, less $80.75 for abstracting, abstract of title examination, and recording expense. There is some evidence that Pattavina deducted $380 and retained it as expenses. This evidence does not establish the fact, but in any event it would not establish usury if proved.

On May 19, 1958, the balance due on the foregoing

note and mortgage was $1,923.71. On that date the Pignottis negotiated an additional loan of $1,500 and executed and delivered a new note to Pattavina in the amount of $3,423.71 with interest at 6 percent per annum, payable $50 per month. A real estate mortgage in the amount of $1,500 was executed and delivered to secure the additional loan. Pattavina incurred expenses in the amount of $23.75. He paid Pignotti the sum of $1,350 as consideration for the note.

On November 15, 1958, the balance due on the note was $3,224.11. Pignotti negotiated an additional loan of $800 and made a new note for $4,024.11 with interest at 6 percent per annum, payable $55 per month. A mortgage of $800 was given to secure the additional loan. Pattavina incurred expenses in the amount of $3.50. He paid Pignotti $720 as consideration for the note.

It was stipulated that the amounts deducted on the last two loans in the amounts of $150 and $80, respectively, were explained by Pattavina as being for expenses. The expenses shown amounted to $27.25. In other words, Pattavina received $126.25 and $76.50 in advance on the last two loans.

There is nothing to indicate that the charges deducted in excess of actual expenses, together with the interest rate provided, would exceed 9 percent per annum for the period of the loan. To constitute usury it is necessary that some amount in excess of the legal maximum be exacted in consideration for the loan. 55 Am. Jur., Usury, § 59, p. 367; Western Securities Co. v. Naughton, 124 Neb. 702, 248 N. W. 56. In the latter case it is said: "The figures of the appellant, as showing usury during the first year, are erroneous in that the entire commission for a five-year loan was added as interest for one year, when it should be spread over the entire term. Upton v. O'Donahue, 32 Neb. 565; Detweiler v. Forman, 120 Neb. 780. 'To constitute usury, it is of course essential that an excess of the legal maximum be exacted in consideration of the loan.' 27 R. C. L. 223,

sec. 24. See McGovern v. Union Mutual Life Ins. Co., 109 Ill. 151. To constitute usury, brokerage charge and interest for term of loan must exceed legal maximum.";

Pignotti contends that the loans here involved violate the provisions of sections 45-114 to 45-155, R. R. S. 1943, in respects other than the alleged excessive rate of interest. This raises an issue as to whether or not the notes and mortgages in the instant case are subject to the provisions of sections 45-114 to 45-155, R. R. S. 1943. The lender in the intant case was not a licensee and the loans made did not exact interest in excess of 9 percent per annum for the period of the loan.

It was the intention of the Legislature in enacting the Installment Loan Act to provide for the exacting of interest in excess of 9 percent per annum as limited by the general interest statute, section 45-105, R. R. S. 1943. It was provided by section 45-116, R. R. S. 1943, that any person after procuring a license may engage or continue in the business of making loans of money, and charge, contract for, and receive the maximum interest and charges provided by the act. The act then provided numerous regulations with which licensees must comply or suffer the penalties provided by the act. This court has held that the inhibitory provisions of the act apply to nonlicensees, meaning that nonlicensees could not make installment loans in excess of 9 percent per annum without complying with the act. This does not subject a nonlicensee to the regulations imposed upon licensed lenders under the act.

A nonlicensee is not required to comply with the provisions of the act regulating licensed lenders, such as maintaining a prescribed place of business, or complying with the rules and regulations of the Department of Banking, or other provisions purely regulatory of licensed lenders. It was not the intention of the Legislature to impose regulations on nonlicensees making loans at a rate of interest that does not exceed 9 percent per annum. It was never intended, as we view it, to

include within the act persons who were not required to obtain a license, who made loans in the traditional manner at 9 percent per annum or less, such as amortized real estate loans, bank-term loans, interfamily loans, and others, simply because they were payable in installments. The general purpose of the act was to provide a means for charging interest in excess of 9 percent per annum, to regulate licensees engaging in the lending business under the act, and to provide penalties for violations of the act. A nonlicensee, by the holding of this court, who made an installment loan in excess of 9 percent per annum, is subjected to the penalties of the act, but not to the regulations imposed on a licensed business. To hold otherwise would place numerous types of amortized and installment loans in jeopardy, although made at interest rates at less than 9 percent per annum. This is not an evil contemplated to be corrected; in fact, it is no evil at all. The problem being dealt with is the permitting of rates of interest in excess of 9 percent per annum, in specified cases, ostensibly where the risk is great and the expense prohibitive. We can come to no other conclusion than that the act was never intended to include the traditional form of making loans by nonlicensees at a rate of interest not exceeding 9 percent per annum.

Pattavina, the lender in the instant case, is not a licensee and the notes and mortgages received by him exact interest at a rate of less than 9 percent per annum for the period of the loan. We hold that he is not subject to the regulatory provisions of the Installment Loan Act. Since the trial court arrived at the same conclusion, although on different grounds, its judgment is correct in result and is affirmed.

AFFIRMED.