VICTOR GRUENEMEIER ET AL., APPELLANTS, V. THE COMMONWEALTH COMPANY, A CORPORATION, APPELLEE.

131 N. W. 2d 713

Filed December 18, 1964. No. 35753.

Kier, Cobb & Luedtke and Janice L. Gradwohl, for appellants.

Ginsburg, Rosenberg, Ginsburg & Krivosha, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, and BROWER, JJ., and ROBERT L. FLORY and ROBERT L. SMITH, District Judges.

WHITE, C. J.

On May 19, 1959, plaintiff Victor Gruenemeier executed a note to the defendant for $17,700 at 9 percent interest payable in 30 days. Expected funds to pay this note not being available, the plaintiffs, on June 10, 1959, executed two new notes and mortgages to pay this original note. The first was a note for $11,700 payable in 36 months at $385 per month, the interest rate being 1½ percent per month on the first $1,000, 1 percent per month on that part in excess of $1,000 up to $3,000, and

¾ of 1 percent (9 percent per annum) on the amount in excess of $3,000. At the same time, the plaintiffs executed another note for $6,000 at 9 percent interest payable in 6 months on December 10, 1959. The record shows numerous subsequent transactions with respect to payments on the notes of June 10, 1959, and notes for additional loans. No question arises as to the validity of these transactions providing the transactions of June 10, 1959, were not tainted with usury, and so they will not be considered in this opinion.

The plaintiffs brought this action to declare the notes of June 10, 1959, invalid and recover back all payments with interest. The defendant cross-petitioned for judgment on the notes and foreclosure of the mortgages securing them. The trial court found for the defendant, entered judgment on the notes for the balance due, and granted foreclosure. The plaintiffs appeal.

The plaintiffs contend that the obligation of $17,700 was split into two separate notes at the same time, on June 10, 1959, for the purpose of obtaining a higher rate of interest, and that the notes were therefore void. Did the defendant have the power to execute each of these loans? The power to make the installment loan of $11,700 is expressly granted by section 8-418, R. R. S. 1943, of the Industrial Loan and Investment Company Act. The defendant is an industrial loan and investment company organized under the provisions of this act. The exactions of interest and the inclusion of an amount at 9 percent per annum above $3,000 is expressly authorized by the statute. Turning to the $6,000 loan at a rate of interest of 9 percent per annum executed at the same time, plaintiffs seem to contend that there is no authorization or power in the defendant to execute this note. First, we note that nothing in the whole act, sections 8-401 to 8-433, R. R. S. 1943, limits the amount of money that can be loaned at a rate of interest of 9 percent per annum. Even the installment loan section, section 8-418, R. R. S. 1943, puts no limits on install-

ment loans of amounts above $3,000 but provides that any such amounts may draw only an interest rate of 9 percent per annum. Does the installment loan provision of the act, section 8-418, R. R. S. 1943, limit the power to make independent loans at a rate of interest of 9 percent per annum? We think not. The original Industrial Loan and Investment Company Act was enacted in 1941. Section 8-407, R. R. S. 1943 (Laws 1941, c. 13, § 6, p. 89), confers the general powers of corporations upon the defendant except those by the act specifically limited. We can find nothing in this act that places any limitation on the powers of industrial loan and investment companies to make single payment 9 percent per annum loans or any number of them. There was no regulation of installment loans or grant of powers to collect interest charges beyond 9 percent per annum in the original act of 1941.

Were these powers changed or limited by the enactment of sections 8-418 to 8-433, R. R. S. 1943, regulating installment loans by such companies and providing for the right to make additional charges on the first $3,000 of money loaned? We think not. The purpose of this act, it appears to us, was plain. The inception of these provisions, sections 8-418 to 8-433, R. R. S. 1943, was in Laws 1943, chapter 18, page 96. The title to this act expressly provided that it was: *"* * * to prescribe regulations for the making of installment loans."* Nothing contained in the title or in the other provisions of the act mentions or inhibits any powers with reference to single payment 9 percent per annum loans. It is clear that the purpose of sections 8-418 to 8-433, R. R. S. 1943 (Laws 1943, chapter 18, page 96), was to grant additional powers to collect interest charges in excess of 9 percent per annum on the first $3,000 of a loan and providing that if such excess charges were enacted, that the loan had to be repaid in 36 months and in approximately equal payments (section 8-429, R. R. S. 1943). There is nothing in the substance of the act or the de-

clared purpose of the act as expressed in the title to warrant any inference that there was any intention to interfere with or to regulate other types of loans than installment loans made for the purpose of collecting excess charges on the first $3,000 of the loan. Nor do we find any subsequent legislative history, after the 1943 grant embodied in this act, that would indicate any attempt to comprehensively regulate or control all loans made by the industrial loan and investment company. Confusion arises because of the construction placed upon similar inhibitory provisions in the Installment Loan Act. But, the Installment Loan Act, sections 45-114 to 45-158, R. R. S. 1943, comprehensively regulates and limits all loans made by such a licensee to small borrowers. Constructions and interpretations under that act are not applicable to the precise situation as to industrial loans and investment companies. Similar inhibitory provisions cannot be applied beyond their express purpose and intent in their inclusion in the act regulating *installment loans of industrial loan and investment companies.* The legislative prohibition or regulation cannot be extended beyond the evils intended to be prevented by the Legislature. So, we come to the conclusion that both of the loans made here can be made independently and are valid loans; and that there is nothing in the Industrial Loan and Investment Company Act which prohibits making single payment 9 percent per annum loans, as well as exercising the power to make installment loans for the purpose of exacting excess charges above a rate of interest of 9 percent per annum up to $3,000.

Plaintiffs next contend that the making of the two loans or multiple loans at the same time was in violation of the statute. We find nothing in the statutes or the law that prohibits multiple loans at the same time, except where they are used as a devise to cloak usury. The only prohibition that the statute, section 8-419, R. R. S. 1943, makes on the splitting of loans is "for the

purpose of obtaining a higher rate of charge," than if the loans were consolidated as one. No other purpose is included in this statute. From this statute, we gather no intent to prohibit the parties from splitting a loan so that one portion of it could be an installment loan, subject to the provisions of the statute in that respect, and another for a fixed amount for a fixed period at a rate of interest of 9 percent per annum. We cannot read into the statute a prohibition that was not expressly declared therein. The splitting statute was directed alone at the evil therein intended to be prevented, namely, the exaction of a higher rate of charge. All of this is made clear in Jourdon v. Commonwealth Co., 170 Neb. 919, 104 N. W. 2d 681, which involved a series of loans bearing interest at the maximum rate. The court said: "If appellee had desired a proper arrangement it could have provided for *9 percent interest on any note executed by appellant during the time a previous note of his was unpaid.* The prohibition of the statute is not that there shall not be more than one loan during any period of time but it is that there shall not be charged 36 percent on the first $50 of unpaid principal and 18 percent on the next $500 of unpaid principal *on more than one loan at the same time.* § 8-418, R. R. S. 1943. There may be as many contracts of loan at the same time as the parties desire but the several loans when considered together must not violate section 8-419, R. R. S. 1943. * * * The statute does not prevent the making of more than one loan to a borrower at the same time. *It does condemn charging maximum interest prescribed by section 8-418, R. R. S. 1943, on the unpaid principal of more than one loan* made to a borrower and existing at the same time for the purpose of obtaining a higher rate of charge. The prohibition of the statute is that the loan company shall not permit any person to become obligated on more than one contract of loan at the same time if the purpose therefor is a

higher charge than if there was only a single obligation." (Emphasis supplied.)

The requirements of section 8-419, R. R. S. 1943, are met if the rate of charge on all outstanding contracts is no higher than would be permitted if all contracts were consolidated in one obligation. We assume therefore that this obligation was one in the sum of $17,700. No matter what mathematics are used the plaintiffs pay no more than the statutory rates of interest on the amounts up to $3,000 permitted by section 8-418, R. R. S. 1943, and a rate of interest of 9 percent per annum on all of the balance. There could be no purpose to secure higher charge. If the loan was split and the excess charges applied to the $3,000 portions of both separate loans, we would have a different result. It was the evil such as present in this type of situation that the statute was intended to prevent and not the situation present here.

Plaintiffs contend that the $6,000 payment on the 9 percent loan at the end of 6 months was a "balloon" payment and prohibited by section 8-429, R. R. S. 1943, providing for approximately equal payments on installment loans. Such an argument could only be considered providing we were required to consider the loan as a consolidated one. The argument then runs that the $6,000 payment in 6 months is unequal and therefore in violation of the statute. What we have said heretofore in this opinion concerning the character and nature of powers to make separate loans disposes of this argument. The validity of each loan may be considered separately except and unless it comes within the prohibition of the multiple loan section, section 8-419, R. R. S. 1943. That section requires consideration as a consolidated loan only for the purpose of determining if the splitting of the loans at the same time was to exact a "higher rate of charge." Further, section 8-429, R. R. S. 1943, which requires equal payments is, by its terms, applicable only to loans "made under this act." The act (Laws 1943, chapter 18, page 96, now sections 8-418

to 8-433, R. R. S. 1943), provides and regulates *installment* loans which contain charges therein in excess of a rate of interest of 9 percent per annum on amounts up to $3,000. The installment loan made in this case of $11,700 fully complied with these provisions. The act was intended to apply to those portions of the loan which bore interest at a rate in excess of 9 percent per annum. Again, confusion arises from the construction of a similar provision in the Installment Loan Act. However, in that act, section 45-138, R. R. S. 1943, carries the equal payment provision, among others, over into all loans and makes it a comprehensive inhibitory provision on a licensee under that act. A 9 percent interest loan by a nonlicensee is not subject to these inhibitory provisions of the Installment Loan Act. Pattavina v. Pignotti, 177 Neb. 217, 128 N. W. 2d 817. An industrial loan and investment company stands in the same position as a nonlicensee. And, the Industrial Loan and Investment Company Act requires no interpretation that these provisions apply to 9 percent interest loans.

One other contention of the plaintiffs deserves mention. They claim usury in the original transaction as to the $17,700 note of May 19, 1959, because the proceeds were not paid out until May 25, 1959. However, the money was kept available for the plaintiffs and could not be paid out until the seller of the trailers brought in the certificates of title. There was no delay or device for the purpose of exacting a higher rate of interest. In such a situation the fact the money was not paid out until after the time interest began to run does not render the contract usurious. Rose v. Munford, 36 Neb. 148, 54 N. W. 129.

It becomes unnecessary to examine various other contentions of the parties. The notes and mortgages executed on June 10, 1959, in the total sum of $17,700 are valid and binding obligations. Insofar as the decision and holding in this case conflict with Dougherty v. Com-

monwealth Co., 172 Neb. 330, 109 N. W. 2d 409, that opinion is overruled. The judgment of the district court is correct and is affirmed.

. AFFIRMED.