GAYLE MCCAUL ET AL., APPELLANTS AND CROSS-
APPELLEES, V. AMERICAN SAVINGS COMPANY, A
NEBRASKA CORPORATION, ET AL., APPELLEES AND
CROSS-APPELLANTS.
L & M RENTALS, A NEBRASKA PARTNERSHIP, APPELLANT
AND CROSS-APPELLEE, V. AMERICAN SAVINGS COMPANY,
A NEBRASKA CORPORATION, APPELLEE AND
CROSS-APPELLANT.
STREAMLINE, INC., A NEBRASKA CORPORATION,
APPELLANT AND CROSS-APPELLEE, V. AMERICAN SAVINGS
COMPANY, A NEBRASKA CORPORATION, APPELLEE AND
CROSS-APPELLANT.
T-B CONSTRUCTION, INC., A NEBRASKA CORPORATION,
APPELLANT AND CROSS-APPELLEE, V. AMERICAN SAVINGS
COMPANY, A NEBRASKA CORPORATION, APPELLEE AND
CROSS-APPELLANT.
TREND 100, INC., A NEBRASKA CORPORATION, APPELLANT
AND CROSS-APPELLEE, V. AMERICAN SAVINGS COMPANY,
A NEBRASKA CORPORATION, APPELLEE AND
CROSS-APPELLANT.

331 N.W.2d 795

Filed April 1, 1983.   Nos. 81-812, 82-100, 82-134, 82-160, 82-161.

W. Eric Wood of Dwyer, O'Leary & Martin, P.C., for appellants.

James B. Cavanagh of Erickson, Sederstrom, Leigh, Eisenstatt, Johnson, Kinnamon, Koukol & Fortune, P.C., for appellee American Savings.

KRIVOSHA, C.J., BOSLAUGH, MCCOWN, WHITE, HASTINGS, and CAPORALE, JJ., and MORAN, D.J.

McCOWN, J.

The plaintiffs, McCaul et al., stockholders of Westmont Enterprises, Inc., and guarantors of a promissory note from Westmont to defendant American Savings Company, sought to enjoin American Savings Company from selling real property pursuant to a trust deed executed in conjunction with a loan to Westmont. American Savings Company counterclaimed and cross-claimed, praying that Westmont be found to be in default on the loan, that judgment for American be entered, and that the sale of the property be authorized. The District Court dismissed the plaintiffs' petition and entered judgment in favor of American Savings Company against Westmont and the plaintiffs, and ordered sale of the property. The plaintiffs have appealed.

Four additional cases brought against American Savings Company have been consolidated with the *McCaul* case on appeal. They involve various factual aspects of the same central issue, and an affirmance of the District Court judgment in the *McCaul* case will be decisive as to all the cases.

On October 23, 1978, the plaintiffs and Westmont Enterprises, Inc., entered into a loan agreement with American Savings Company, an industrial loan and investment company licensed under the provisions of Neb. Rev. Stat. §§ 8-401 et seq. (Reissue 1977).

On October 23, 1978, Westmont executed a promissory note to American in the principal sum of $176,375.69, with interest at 12 percent per annum. The plaintiffs were guarantors of the promissory note. The terms of the loan agreement also included the payment of a $5,000 fee by Westmont to American as a "service charge" and the assignment of four life insurance policies to be issued on the lives of the individual plaintiffs as collateral. As

principal security for the loan, Westmont executed a first trust deed to American on real property owned by Westmont.

Westmont failed to pay the installment of principal and interest due on December 1, 1979, or any payments thereafter. American declared a default and accelerated the entire debt.

In addition to failure to pay principal and interest when due, Westmont was also in default for failure to pay taxes and assessments, failure to preserve and maintain the property, and in allowing a receiver to be appointed over the business of Westmont. American gave notice that the property would be sold at public auction under the terms of the trust deed. The plaintiffs then brought this action seeking to enjoin the sale on the ground that the loan was in violation of the industrial installment loan act and the Consumer Protection Act, and a temporary restraining order was granted.

American filed a counterclaim and cross-claim, praying that the court find Westmont in default on the promissory note and loan, enter judgment for American, and authorize sale of the property.

Following trial on August 4, 1981, the District Court held that the loan by American to Westmont was not subject to the industrial installment loan act, Neb. Rev. Stat. §§ 8-435 et seq. (Reissue 1977), and was also exempt from the Consumer Protection Act, Neb. Rev. Stat. §§ 59-1601 et seq. (Reissue 1978). The court dissolved the temporary restraining order, dismissed plaintiffs' petitions, and entered judgment for American Savings Company against Westmont and the plaintiffs in the amount of $231,766.84, which included principal and interest to the date of the judgment on October 21, 1981. The plaintiffs have appealed.

Judgments for American Savings Company were also entered in each of the four consolidated cases and in each of them the plaintiffs have appealed.

The plaintiffs contend that the loan from Ameri-

can to Westmont is in violation of the installment loan act, §§ 8-435 et seq., and is not exempt from that act under any of the subsections of Neb. Rev. Stat. § 45-101.04 (Reissue 1978).

At the time American made the loan to Westmont which is involved here, Neb. Rev. Stat. § 45-101.03 (Reissue 1978) provided: "Except as provided in section 45-101.04, any rate of interest which may be agreed upon, not exceeding eleven per cent per annum on the unpaid principal balance, shall be valid upon any loan or forbearance of money, goods, or things in action and may be taken yearly, for any shorter period, or in advance, if so expressly agreed."

At the same time, § 45-101.04 provided in part: "The limitation on the rate of interest provided in section 45-101.03 shall not apply to:

"(1) Loans made by any licensee or permittee operating under a license or permit duly issued by the Department of Banking and Finance pursuant to sections 8-319, 8-401 to 8-417, 8-815 to 8-823, 8-825 to 8-829, 21-1760 to 21-1764, 21-1766 to 21-1796, 21-1799 to 21-17,108, 21-17,110 to 21-17,119, 45-114, 45-116 to 45-140, or 45-142 to 45-155;

"(2) Loans made to any corporation, partnership, or trust;

"(3) The guarantor or surety of any loan to a corporation, partnership, or trust;

"(4) Loans made when the principal amount of the indebtedness is one hundred thousand dollars or more." Sections 8-401 to 8-417 refer to industrial loan and investment companies and American is such a licensee.

Subsection (1) of § 45-101.04 exempts loans made by specific *lenders* from general maximum interest limitations when they are operating in compliance with a license or permit duly issued by the Department of Banking and Finance which authorizes specialized interest rate ceilings above the general maximum. The remaining subsections of § 45-101.04

exempt various specified *transactions* from all state interest rate ceilings.

The plaintiffs contend that if a lender is exempt from general usury limits under subsection (1) of § 45-101.04 as to loans made within the terms of its license authority, the remaining transactional exemptions do not apply to licensees. The argument is that although any unlicensed lender would be able to enter into any of the loan transactions specified in subsections (2) et seq. of § 45-101.04, free of the limitations of general and special usury laws, a licensed lender would still be subject to all the limitations applicable to lenders as to loans made under the specific authorization of the licensing law.

Most entities which regularly lend money in Nebraska are regulated by the Department of Banking and Finance and hold a license or permit to make specified types of loans under statutory terms and specified interest rates. Virtually all of such lenders have loans which are made within general usury limits, others which are made under special license limits, and still other loans which are exempt from both general and special usury statutes. To hold that the transactional exemptions of §§ 45-101.04(2) et seq. do not apply to licensees or permittees but only to nonlicensees would render the statute virtually meaningless.

In *Gruenemeier v. Commonwealth Co.*, 178 Neb. 66, 131 N.W.2d 713 (1964), we held that the industrial loan and investment company act did not impinge upon the general powers of loan and investment companies to make loans which were otherwise valid and legal loans in the absence of the act. We held that the authority to make loans under the act constituted an additional grant of power, but did not affect the power to make loans which were not in violation of the general usury law. In that case, with respect to loan transactions by a licensee which would have been valid and legal under the general usury statutes, we said: "An industrial loan and in-

vestment company stands in the same position as a nonlicensee." *Id.* at 73, 131 N.W.2d at 717. See, also, *Albers v. Overland Nat. Bank,* 212 Neb. 578, 324 N.W.2d 396 (1982).

The evidence in the present cases is undisputed that the Department of Banking and Finance, charged with the duty of enforcing the provisions of §§ 8-435 et seq., has consistently taken the position that the loan transactions specified in subsections (2), (3), and (4) of § 45-101.04 are exempt from the provisions of §§ 8-435 et seq. Although construction of a statute by a department charged with enforcing it is not controlling, considerable weight will be given to such a construction, particularly when the Legislature has failed to take any action to change such an interpretation. See *Seldin v. Northland Mortgage Co.,* 189 Neb 175, 202 N.W.2d 174 (1972).

The exemptions specified in § 45-101.04(2), (3), and (4) exempt the specified transactions from the installment loan act, §§ 8-435 et seq., as well as from the interest rate limitations of § 45-101.03.

The plaintiffs also contend that the conduct of American Savings Company in making the loans involved here constituted an unfair trade practice in violation of the Nebraska Consumer Protection Act, §§ 59-1601 et seq.

Section 59-1617 provides in part: "Nothing in sections 59-1601 to 59-1622 shall apply to actions or transactions otherwise permitted, prohibited or regulated under laws administered by the Director of Insurance, the Public Service Commission, the federal power commission or any other regulatory body or officer acting under statutory authority of this state or the United States . . . ."

In *Kuntzelman v. Avco Financial Services of Nebraska, Inc.,* 206 Neb. 130, 291 N.W.2d 705 (1980), we held that an installment loan made by a licensee under the installment loan act was a transaction permitted, prohibited, or regulated by a regulatory body acting under the statutory authority of the

state and was therefore exempt from the provisions of the Consumer Protection Act.

The records in the cases now before us establish that each of the loans involved here was reported to and at least indirectly approved by the Department of Banking and Finance. Under the provisions of § 59-1617 an installment loan by an industrial loan and investment company, regulated by the Nebraska Department of Banking and Finance, is exempt from the Consumer Protection Act, §§ 59-1601 et seq.

In view of the disposition made of the basic issues it is unnecessary to discuss the remaining assignments of error.

The judgment of the District Court in *McCaul* was correct and is affirmed. The judgment in that case is determinative of the issues in the remaining consolidated cases, and each of those judgments is affirmed.

AFFIRMED.