REQUESTED BY: Senator Jerome Warner Nebraska State Legislature
You have requested the opinion of this office regarding the administrative decision of the Director of the Department of Environmental Quality ("Director") to indefinitely suspend remedial actions required under the Leaking Underground Storage Tank ("LUST") program at 659 petroleum-contaminated sites. In particular, you stated that "the [Program Evaluation] committee would like to know whether you believe it would be advisable to enact legislation specifically authorizing the director to take such action." (emphasis in original). You explain that the committee is considering legislation to address issues raised by its evaluation of the LUST program.
We addressed a number of issues involving the Leaking Underground Storage Tank program, and in particular the Director's authority pursuant to the Petroleum Remedial Action Act, Neb. Rev. Stat. §§ 66-1501 to 66-1530 ("Remedial Action Act"), in a previous opinion. See Op. Att'y. Gen. No. 95083 (October 27, 1995). A review of the contents of Opinion No. 95083 may at least partially address the issue about which you requested advice. One question addressed in Opinion No. 95083 was whether the Department has any flexibility, once reimbursements approved exceed the amount in the Petroleum Release Remedial Action Cash Fund ("Cash Fund"), to utilize the Cash Fund in any manner inconsistent with the requirements in Neb. Rev. Stat. § 66-1523(4) (Cum. Supp. 1994). Section66-1523 requires reimbursements normally to be paid in the same order in which they are submitted to the Department.
The Department interprets the provisions of Neb. Rev. Stat. § 66-1529.02(1) (Cum. Supp. 1994) as providing an exception to the normally chronological order requirement for reimbursements under § 66-1523(4). This interpretation is based on the Director's determination that certain sites pose a danger to public safety or the environment. In Opinion No. 95083, we agreed with the Department's interpretation of the provisions of § 66-1523(4), when read in conjunction with § 66-1529.01(1).
Whether it would be advisable to enact legislation specifically authorizing the Director to indefinitely suspend cleanup projects required under the Petroleum Products and Hazardous Substances Storage and Handling Act, Neb. Rev. Stat. §§ 81-15,117 to 81-15,127, or the Remedial Action Act would depend largely on the purposes which the Legislature wishes the aforementioned Acts to achieve.
Pursuant to its duty to administer the provisions of the above Acts, the Department has interpreted the statutes dealing with remedial actions and reimbursements as allowing suspension of remedial actions when the Cash Fund becomes insufficient to meet outstanding reimbursement claims submitted by petroleum tank owners and operators. If the Legislature supports this interpretation, no action would necessarily be required to allow the Department to continue operating in accordance with its understanding of the statutes involved. When the Legislature does not enact legislation to alter an administrative agency's interpretation of a statute, the courts have construed the Legislature's decision not to alter the agency's interpretation as lending support to the agency's position. The Nebraska Supreme Court has held that an administrative agency's interpretation of a statute over which it has enforcement authority is not controlling, but considerable weight will be given to the construction, particularly when the Legislature fails to take steps to change the agency's interpretation. OmahaPublic Power Dist. v. Nebraska Dept. of Revenue,248 Neb. 518, 529, ___ N.W.2d ___ (1995). See alsoMcCaul v. American Savings Co., 213 Neb. 841,331 N.W.2d 795 (1983). We note, though, that a statute specifically providing such authority, as opposed to mere acquiescence, provides a much clearer indication of the Legislature's intentions for an administrative agency or a court to follow.
Conversely, if the Legislature does not agree with the Department's interpretation of the statutes regarding suspension of cleanup sites, legislative action may be required in order to change the Department's current actions and provide the Director with guidance as to how the Legislature wishes the Department to handle the difficulties presented by the Cash Fund's inability to provide immediate reimbursement to all owners and operators with approved but unpaid reimbursement claims.
As we pointed out in Opinion 95083, although we agree with the Department's interpretation and believe it is a reasonable reading of the current statutes, it is not clear whether the Department's interpretation would be upheld should a challenge be brought in court. When read separately, there appear to be discrepancies between the provisions of § 66-1523(4) and § 66-1529.02(1). Legislative action providing more specificity regarding the Director's authority to indefinitely suspend remedial actions at contaminated sites when the Cash Fund becomes insufficient to supply reimbursements for approved remedial actions would presumably clarify any ambiguities and remove much of the uncertainty regarding the Director's authority to take such actions.
Sincerely,
 DON STENBERG Attorney General
 Timothy J. Texel Assistant Attorney General
cc: Patrick J. O'Donnell Clerk of the Legislature
Approved:
Don Stenberg
Attorney General