REQUESTED BY: Terry Carlson, Executive Director Nebraska State Electrical Board
You have requested the opinion of this office regarding whether there is a conflict between the provisions of Neb. Rev. Stat. § 81-2106 and Neb. Rev. Stat. § 81-839. Section81-2106 is part of the Nebraska State Electrical Act, while §81-839 deals with registration of professional engineers and architects. In the opinion request, you explained that your concern was caused by a letter from the Executive Director of the State Board of Examiners of Professional Engineers and Architects ("Board of Examiners"). In the letter, the Board of Examiners' Director expressed concern that some of the State Electrical Board's ("Electrical Board") rules may not be in compliance with Nebraska statutes. The letter from the Board of Examiners' Director states that Neb. Rev. Stat. § 81-839 does not support the position that electrical contractors or master electricians may design electrical installations. The provisions of § 81-2106 and § 81-839 do raise some concerns, but we believe they can be read so as to not create a conflict. We also believe that Class A and B electrical contractors, electrical contractors, and Class A and B master electricians licensed by the State Electrical Board are authorized to design electrical installations.
Neb. Rev. Stat. § 81-2106 requires licensure as an electrician in order to engage in certain activities related to electrical installation. Section 81-2106 states:
 81-2106. Plan, lay out, or supervise certain activities; license required; exceptions.
Except as provided in section 81-2108, 81-2110, or 81-2112, no person shall, for another, plan, lay out, or supervise the installation of wiring, apparatus, or equipment for electrical light, heat, power, and other purposes unless he or she is licensed by the board as a Class A electrical contractor, a Class B electrical contractor, an electrical contractor, a Class A master electrician, or a Class B master electrician.
Neb. Rev. Stat. § 81-2106 (1994).
The letter from the Board of Examiners did not indicate which of the Electrical Board's rules they believed may fail to comply with Nebraska law. It did state that the "implication that electrical contractors or master electricians may design electrical installations is not supported by Section 81-839." Section 81-839 states:
 81-839. Engineering or architecture; practice; registration required; use of title; restriction. In order to safeguard life, health, and property, any person practicing or offering to practice the profession of engineering or architecture in this state shall be required to submit evidence that he or she is qualified to practice and shall be registered as provided in section 81-847.
 It shall be unlawful for any person to use the title of professional engineer or architect or to practice or offer to practice the profession of engineering or architecture in this state unless such person has been duly registered or is exempt under section 81-853.
Neb. Rev. Stat. § 81-839 (1994).
Section 81-840(1) defines engineering. Professional engineer, as used in §§ 81-839 to 81-856, is defined in pertinent part as "any professional service, such as consultation, investigation, evaluation, planning, design, or responsible supervision of construction . . . when such service requires the application of engineering principles and data." Neb. Rev. Stat. § 81-840(1) (1994).
The part of § 81-2106 setting out the activities in which no person can engage unless licensed as an electrical contractor or master electrician states that only these categories of electricians may "plan, lay out, or supervise" the installation of wiring, apparatus, or equipment for electrical purposes. In setting out the activities in which no person can engage unless registered as a professional engineer, § 81-840(1) states that only professional engineers are permitted to engage in "consultation, investigation, evaluation, planning, design, or responsible supervision of construction" when the services require application of engineering principles.
The term "design," used in the professional engineering statutes, and the term "plan" used in the State Electrical Act are, as used in the statutes involved here, synonymous. The term "design" has been defined as meaning "To form plan or schemeof, conceive and arrange in mind, originate mentally,plan out, contrive." Black's Law Dictionary, 447 (6th ed. 1990) (emphasis added). The term "plan" is defined as "A delineation; a design; a draft, form or representation." Id. at 1150 (emphasis added). Therefore, both § 81-2106 and § 81-840(1) authorize their respective category of professionals to engage in designing and/or planning electrical installations in construction projects, while excluding all other persons from engaging in this activity.
When read together, it appears that the provisions of §81-2106 and §§ 81-839 and 81-840(1) may create a potential conflict. If read strictly and narrowly, these statutes could be read to mean that persons engaged in planning and designing electrical installations are required to be licensedboth as electrical contractors or master electriciansand registered as professional engineers. We do not believe such an interpretation was intended by the Legislature. We therefore conclude the more reasonable reading of the statutes involved supports the interpretation that a person designing electrical installations must be either licensed as an electrical contractor or master electrician or be a registered professional engineer.
Although the statutes involved are not part of the same act, they deal with the same general subject of planning, designing, and supervising the installation of electrical systems in structures, buildings, equipment, etc. The State Electrical Act, however, deals specifically with electrical systems. When a series of statutes on a subject are reviewed, the components of the series of statutes on that subject may be conjunctively considered and construed in order to determine the Legislature's intent, so that the different provisions are consistent, harmonious, and sensible. Omaha Pub. Power Dist. v.Nebraska Dept. of Revenue, 248 Neb. 518, 530,537 N.W.2d 312, 319 (1995) (quoting Fecht v. The Bunnell Co.,243 Neb. 1, 3, 497 N.W.2d 50, 52 (1993)). See also In reInterest of Lisa O., 248 Neb. 865, 540 N.W.2d 109 (1995). Regarding our present inquiry, we believe it is consistent and harmonious to read the statutes to require persons planning, designing, laying out, or supervising electrical installations to either be a registered professional engineer or a licensed electrical contractor or master electrician.
With the above interpretation, both statutes remain fully viable and achieve the statutes' intended purposes. The Nebraska Supreme Court has held that when construing a statute, a court must look to the statutory objective to be accomplished, the evils and mischiefs sought to be remedied, and the purposes to be served. The court will then adopt a reasonable or liberal construction which best achieves the statute's purpose, rather than a construction which might defeat the statutory purpose.Centra, Inc. v. Chandler Ins. Co., 248 Neb. 844, 856,540 N.W.2d 318, 328 (1995), cert. denied,116 S.Ct. 1681 (1996); see also Omaha Pub. Power Dist. v. NebraskaDept. of Revenue, 248 Neb. 518, 530, 537 N.W.2d 312, 319
(1995). In this same vein, it is a longstanding rule of statutory construction that "In the exposition of statutes, the reason and intention of the lawgiver will control the strict letter of the law, when the latter would lead to palpable injustice or absurdity." Rebman v. School Dist. No.1, 178 Neb. 313, 318, 133 N.W.2d 384, 387 (1965),quoting Hevelone v. City of Beatrice, 120 Neb. 648,234 N.W.2d 791 (1931). The available evidence indicates that the Legislature's purpose in enacting the statutes was to ensure competent planning of electrical installation to safeguard the public's health and safety, not to place a dual burden on professionals in the electrical field by requiring both licensure as an electrician and registration as an engineer.
Both the State Electrical Act and the statutes dealing with professional engineers and architects are intended to protect the public's health, safety, and property. In the State Electrical Act, several statutes mention the protection of human health and property, especially for purposes of disconnecting power to substandard electrical installations. See Neb. Rev. Stat. §§ 81-2104(5), (7), and (8), 81-2127, 81-2129, 81-2136, and 81-2137 (1994). Section 81-839 explicitly states that the purpose of registration of professional engineers and architects is "In order to safeguard life, health, and property. . . ." Under our previously stated interpretation of §§ 81-2106 and81-839, planning and designing electrical systems for structures and other uses would be conducted by qualified, licensed or registered individuals knowledgeable in their respective professions. The public's health, safety, and property would presumably be protected whether a registered professional engineer or a licensed electrical contractor or master electrician planned the electrical installations anticipated in § 81-2106 and §§ 81-839 and 81-840(1).
When engaging in statutory construction, Nebraska courts may examine the legislative history of an Act or statute when attempting to ascertain the Legislature's intent. OmahaPub. Power Dist. v. Nebraska Dept. of Revenue, 248 Neb. 518,526, 537 N.W.2d 312, 317 (1995). A review of the history of the State Electrical Act, and § 81-2106 in particular, contains information which may be helpful in trying to determine what the Legislature intended when it enacted § 81-2106 (originally designated as § 81-577). The legislative history indicates that the primary purpose of the State Electrical Act was to protect the public's safety by ensuring electrical work and installations are performed and inspected by qualified, knowledgeable individuals. During the committee hearing, Senator Barnett, the bill's primary introducer, stated that "the main thrust behind an electrical act is for competent installation of electrical services that follows standards set forth through this electrical board." Committee Records on LB 525, 84th Neb. Leg., 1st Sess. 2 (February 27, 1975). The public's safety is a theme recurring throughout the legislative history of the State Electrical Act. If the Legislature's intent in creating a State Electrical Act was to protect the public's health and safety, we believe it is reasonable to assume that goal will be met by allowing electrical installations to be designed either by the categories of licensed electricians set out in § 81-2106, or by registered professional engineers as contemplated in §81-839 and 81-840(1).
Perhaps even more importantly, we note the original provisions set out in the 1975 version of the State Electrical Act. Neb. Rev. Stat. § 81-577 (Cum. Supp. 1976) created what is now § 81-2106. It allowed only master electricians to plan electrical installations. Other than adding electrical contractors to the categories of electricians allowed to plan electrical installations, the original and current forms of the statute are substantively identical. Neb. Rev. Stat. §81-579 (Cum. Supp. 1976) set out the activities which either master or journeymen electricians could perform. Although §81-577 allowed master electricians to plan electrical installations, journeymen electricians were not permitted to do so. Section 81-579 stated that journeymen electricians could "for another, wire for or install electrical wiring, apparatus, or equipment. . . ." Neb. Rev. Stat. § 81-579 (Cum. Supp. 1976). The words "plan, lay out, or supervise" were present only in the statute dealing with master electricians. The Legislature's decision to selectively include language necessary to provide master electricians with the authority to plan electrical installations, while withholding that same language from statutes detailing the permitted activities for other categories of electricians, indicates the Legislature's careful consideration of the topic, and its intent to provide certain categories of electricians the specific authority to plan or design electrical installations.
It is our understanding that requiring persons designing electrical installations to acquire both engineering and electrical licenses has never been required by either the Board of Examiners or the Electrical Board. In fact, Electrical Board Rule 5 exempts registered professional electrical engineers from the requirement that they hold a state electrical license in order to plan electrical installations for architects or consulting engineers. A review of the Board of Examiners' rules and regulations, 110 NAC 1-9, did not disclose any similar exception for electricians. The Electrical Board's Rule 5 clearly shows that the Electrical Board does not interpret the statutes involved to mean that professional engineers must become licensed electricians to plan electrical installations.
If the Legislature had intended to require such persons to meet dual qualifications, the Legislature could have taken action to rectify the Boards' incorrect interpretations. By not acting to change how the statutes involved have been interpreted and acted upon by the agencies charged with implementing their provisions, the Legislature may have given its implied approval that designers of electrical installations need not be both registered as professional engineers and licensed as electricians. An administrative agency's interpretation or construction of statutes it is responsible for enforcing is not controlling but will be given considerable weight by a court, particularly when the Legislature fails to change or correct the agency's interpretation. Omaha Pub. Power Dist. v.Nebraska Dept. of Revenue, 248 Neb. 518, 529,537 N.W.2d 312, 319 (1995); McCaul v. American Savings Co.,213 Neb. 841, 846, 331 N.W.2d 795, 798 (1983); see also Centra,Inc. v. Chandler Ins. Co., 248 Neb. 844, 540 N.W.2d 318
(1995).
We do not believe the language of the statutes supports the Board of Examiners' contention that electrical contractors and master electricians may not design electrical installations. It is a general rule of statutory construction that when the Legislature enacts a law which affects an area already the subject of other statutes, it is presumed the Legislature did so with full knowledge of the preexisting legislation. Whitev. State, 248 Neb. 977, 981, 540 N.W.2d 354, 357 (1995). This principle lends support to the conclusion that § 81-2106
allows electrical contractors and master electricians to plan or design electrical installations. The precursors to §§ 81-839
and 81-840(1) were originally enacted in 1937. See
C.S. Supp. §§ 71-3301 and 71-3302 (1937). The language in the original statutes was virtually identical to the current statutes. Section 81-2106, however, was enacted in 1975.See Neb. Rev. Stat. § 81-577 (Cum. Supp. 1976). The main difference in the original statute and its current form is that the earlier form dealt only with master electricians. When comparing §§ 81-2106 and 81-839, keeping in mind the principle that the Legislature is presumed to have acted with full knowledge of statutes already affecting an area, it appears clear that § 81-2106 created an additional category of persons allowed to engage in certain activities previously limited to professional engineers by §§ 81-839 and 81-840.
Section 81-839 states that persons practicing or offering to practice the profession of engineering, or using the title of professional engineer, must be duly registered with the Board of Examiners. To the best of our knowledge, the issues raised concerning potential statutory conflicts do not involve allegations that electrical contractors or master electricians have held themselves out to be, or are using the title of, professional engineers without authorization to do so.
The language in the State Electrical Act, Neb. Rev. Stat. §§ 81-2105 to 81-2145 (1994), indicates that the Legislature specifically intended and authorized electrical contractors and master electricians to plan the installation of electrical wiring and equipment. Section 81-2106 forbids persons not licensed by the State Electrical Board as a Class A or B electrical contractor, an electrical contractor, or a Class A or B master electrician to "plan" or "lay out" electrical wiring, equipment, etc. Section 81-2106 therefore explicitly authorizes persons licensed in the listed categories to engage in the planning/designing and laying out of electrical installations for electrical light, heat, power, and other purposes.
Also, Neb. Rev. Stat. § 81-2102 defines the terms used in the State Electrical Act. The definitions for Class A and B electrical contractors, Class A and B master electricians, and electrical contractors all contain language providing that the terms refer to those individuals who have the necessary qualifications, training, experience, and knowledge to properly plan, lay out, and supervise the installation of wiring, apparatus, and equipment for electric light, heat, power, and other purposes. See Neb. Rev. Stat. § 81-2102(3), (5), (6), and (10) (1994). Fire alarm installers are also defined as those persons qualified to plan or lay out electrical wiring, etc., limited to the area of fire alarm systems operating on fifty volts or less. See § 81-2102(11) (1994). The definitions for Class A and B journeymen electricians, apprentice electricians, and special electricians show these persons do not have the authority to plan or lay out installation of electrical wiring, apparatus, and equipment. See
§ 81-2102(1), (4), (7), and (19) (1994).
It is an accepted principle of statutory construction that when two statutes pertain to the same general topic, the more specific statute will control if the statutes have potentially conflicting provisions. State ex rel. Stenberg v.Murphy, 247 Neb. 358, 370, 527 N.W.2d 185, 195 (1995);AMISUB v. Board of County Comm'rs of Douglas County,244 Neb. 657, 663, 508 N.W.2d 827, 832 (1993). In reviewing the statutes involved in the opinion request, § 81-2106 deals specifically with planning the installation of wiring, apparatus, or equipment for various electrical purposes. Conversely, §§81-839 and 81-840(1) do not deal exclusively with or mention electrical installations, nor do they proscribe electrical contractors or master electricians from engaging in planning or laying out of electrical installations. We note that none of the statutes under consideration specifically require or imply that electricians must also be registered engineers, or that professional engineers also be licensed as electricians, in order to design electrical installations.
The provisions of §§ 81-839 and 81-840(1) cannot be viewed in a void without acknowledging the authority provided to licensed electricians in § 81-2106. Therefore, we believe that the applicable statutes, when read together, do not support the position that electrical contractors or master electricians are violating § 81-839 when they design electrical installations.
Although it is our opinion that persons designing electrical installations are not required to be both a licensed electrician as well as a registered professional engineer, this interpretation is not completely clear. There exists some evidence in addition to the literal language of the statutes which could indicate both licensure and registration may be required. For example, we note that the statute setting out the membership criteria for the Electrical Board requires one member be a registered professional engineer. Neb. Rev. Stat. §81-2103 (1994). A court may construe the requirement that registered professional engineers be represented on the Electrical Board as lending support to the belief that persons designing electrical installations be both registered professional engineers and licensed electricians.
It is our opinion that an ambiguity may be present between the provisions of § 81-2106 and §§ 81-839 and 81-840(1). The statutes could be interpreted to require that all persons designing electrical installations are required to be both licensed as a Class A or B electrical contractor, electrical contractor, or Class A or B master electrician with the Electrical Board and be registered as a professional engineer with the Board of Examiners for Professional Engineers and Architects. In addressing whether dual licensure and registration is required, in order to harmonize the statutes' provisions and comport with what we believe was the Legislature's intent, we believe the more reasonable construction is that persons designing electrical installations for the purposes set out in § 81-2106 and § 81-840(1) must be either licensed as an electrician as set out in § 81-2106 or must be a registered professional engineer as provided for in §§ 81-839
and 81-840, but not both. Whether this position would be adopted by the Nebraska courts is not entirely clear. The Electrical Board or the Board of Examiners may therefore wish to request the Legislature to address this issue in future legislation.
Regarding whether electricians licensed in the categories stated in § 81-2106 are permitted to design electrical installations, we conclude that such licensed electricians do have the authority to design, plan, lay out, and supervise electrical installations performed for another, for electric light, heat, power, and other purposes.
Sincerely,
 DON STENBERG Attorney General
 Timothy J. Texel Assistant Attorney General
Approved:
Don Stenberg
Attorney General