ROSE EQUIPMENT, INC., A NEBRASKA CORPORATION, APPELLANT, v. FORD MOTOR COMPANY, A CORPORATION, APPELLEE.

535 N.W.2d 404

Filed July 7, 1995.   No. S-93-825.

Terrance A. Poppe, of Morrow, Poppe, Otte, Watermeier & Phillips, P.C., for appellant.

Stephen H. Nelsen, of Cline, Williams, Wright, Johnson & Oldfather, for appellee.

CAPORALE, LANPHIER, and CONNOLLY, JJ., and WITTHOFF, D.J., and BOSLAUGH, J., Retired, and RONIN, D.J., Retired.

PER CURIAM.

Rose Equipment, Inc. (Rose), appeals from an order by the district court for Lancaster County which affirmed the decision of the Nebraska Motor Vehicle Industry Licensing Board to terminate a franchise agreement between Rose and Ford Motor Company (Ford). This is an appeal in accordance with the Administrative Procedure Act. See Neb. Rev. Stat. § 60-1435 (Reissue 1993).

Rose and Ford entered into a franchise agreement for the sale and service of Ford's heavy-duty-truck line. Rose asserts that since 1988, Ford sought to cripple Rose's dealership by refusing to extend credit to Rose, refusing to pay for warranty work, suggesting transferring the franchise in Lincoln to Sapp Brothers Ford, refusing to respond in a timely manner to Rose's concerns regarding parts returns, and terminating Rose's floor plan without explanation. Ford contends that it had good cause to seek termination, since (1) Rose's truck sales were excessively low as compared to other dealers in Lincoln and similar markets, (2) Rose's parts purchases from Ford were continually low, (3) Rose refused to make any substantial or permanent investment in the franchise, (4) Rose had inadequate equipment and parts to properly serve Ford customers, (5) Rose

refused to perform warranty work on Ford trucks, (6) Rose failed to actively promote the sale of Ford vehicle products and failed to hire a sales person to sell the Ford trucks, (7) Rose failed to maintain an inventory of trucks, and (8) Rose failed to submit adequate financial statements to Ford.

In March 1991, Ford filed an application with the board to terminate the franchise agreement pursuant to Neb. Rev. Stat. § 60–1420 (Reissue 1993). An evidentiary hearing was held before the board on July 26. On March 12, 1992, the board granted Ford's application to terminate the franchise. Rose appealed to the district court, and the district court reversed and remanded the decision upon finding that Rose did not receive a fair hearing. The board reheard the matter on October 29 and again granted Ford's application to terminate the franchise. Rose again appealed to the district court, which affirmed the board's decision.

Rose contends that the district court erred in sustaining the board's decision to terminate the franchise agreement because Ford failed to meet its burden of proof on the issue of good cause.

The judgment rendered or final order made by the district court in an Administrative Procedure Act appeal may be reversed, vacated, or modified by the Supreme Court or the Court of Appeals for errors appearing on the record. *Sunrise Country Manor v. Neb. Dept. of Soc. Servs.*, 246 Neb. 726, 523 N.W.2d 499 (1994). When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Wagoner v. Central Platte Nat. Resources Dist.*, 247 Neb. 233, 526 N.W.2d 422 (1995). See, *Sunrise Country Manor, supra*; *Abbott v. Department of Motor Vehicles*, 246 Neb. 685, 522 N.W.2d 421 (1994).

Rose first argues that it was denied a fair hearing as required by Neb. Rev. Stat. § 60–1427 (Reissue 1993), since not all members of the board were present at the hearing, but admittedly reviewed the testimony before reaching a decision. We note that the requirement of due process is satisfied in the

de novo review in the district court. See Neb. Rev. Stat. § 84-917(5)(a) (Reissue 1994). Further, there is no requirement in § 60-1427 that members of the board be present physically at hearings pursuant to the act. The assignment is without merit.

Section 60-1420 establishes the conditions upon which a franchisor may terminate a franchise agreement with the franchisee. Pursuant to § 60-1420, Ford must establish (1) that it has good cause for termination, (2) that upon termination Ford will establish another franchise in the same line–make in the community or that the community cannot support the franchise, and (3) that Ford will comply with the repurchase provisions found in Neb. Rev. Stat. § 60-1430.02 (Reissue 1993).

Neb. Rev. Stat. § 60-1433 (Reissue 1993) lists nonexclusive circumstances the board considers to determine whether good cause exists for termination. Those nonexclusive circumstances include:

(1) Amount of business transacted by the franchisee;

(2) Investment necessarily made and obligations incurred by the franchisee in the performance of his part of the franchise;

(3) Permanency of the investment;

(4) Whether it is injurious to the public welfare for the business of the franchisee to be disrupted;

(5) Whether the franchisee has adequate . . . equipment, parts and qualified service personnel to reasonably provide consumer care . . . ;

(6) Whether the franchisee refuses to honor warranties of the franchisor to be performed by the franchisee if the franchisor reimburses the franchisee for such warranty work performed by the franchisee;

(7) . . . [F]ailure by the franchisee to substantially comply with those requirements of the franchise which are determined by the board to be reasonable and material; and

(8) . . . [B]ad faith by the franchisee in complying with those terms of the franchise which are determined by the board to be reasonable and material.

*Id.* Good cause for termination cannot be established by "[t]he

sole fact that the franchisor desires further penetration of the market" or "[t]he fact that the franchisee refused to purchase or accept delivery" of vehicles or parts not ordered by the franchisee. Neb. Rev. Stat. § 60-1429 (Reissue 1993). Each of the above listed conditions will be discussed below as they apply to the facts.

The evidence supports a finding that from 1983 through 1990, except 1985, Rose's percentage of the heavy-truck registrations sold in the Lincoln market was below district, regional, and national averages. Rose's heavy-truck sales were substantially less than those of dealers located in Omaha and Grand Island. The Omaha dealer sold over 13 times as many trucks as Rose, and the Grand Island dealer sold nearly $3^1/_2$ times as many trucks as Rose from 1985 through 1990.

Ford allowed Rose to set its own sales objectives, which Rose never met. The evidence also shows that Rose's truck-parts purchases were lower on average than those of the Omaha and Grand Island dealers. Although Rose was capable of substantial parts purchases as evidenced by the amounts purchased in 1987 and 1988, Rose's parts purchases fell dramatically in 1990.

Rose argues that Ford sought termination based solely on the fact that Ford desired further market penetration which, according to § 60-1429, cannot be considered good cause for termination. However, § 60-1433 does allow the board to consider the amount of business transacted. Furthermore, market penetration certainly is not Ford's sole reason for seeking termination as shall be discussed below.

As to the amount of investment necessarily made by Rose, we consider only those investments required by Ford under the franchise agreement. See *In re Application of General Motors Corp.*, 232 Neb. 11, 439 N.W.2d 453 (1989). The investment required by Ford in this case is nominal. The Rose facility was already in existence at the time the franchise agreement was entered into with Rose, and no investment in the facility was required by Ford. The only investment Rose had to make under the agreement was the purchase of parts inventory. The record reflects that the average amount of Rose's parts inventory was nominal. Indeed, the only evidence of a permanent investment Rose made was reflected in its parts inventory.

The proximity of Grand Island and Omaha to Lincoln will allow Rose's customers to obtain service, so termination of Rose's franchise agreement would not be injurious to public welfare.

The record reflects that although Rose's service facilities are adequate and its personnel qualified, its parts inventory is not adequate, nor does it maintain all of the special tools necessary to properly service Ford's heavy trucks. The record also reflects that Rose refused to do warranty work on Ford trucks. This is evidenced by statements made by an owner of Rose to a Ford engineer, by the drop in warranty claims, and by customer complaints made to Ford about Rose's refusal to do warranty work.

Finally, there is evidence that Rose neglected to comply with the reasonable and material requirements of the franchise agreement by Rose's failure to aggressively promote Ford products, failure to maintain any truck inventory, failure to hire a sales person to sell the trucks, failure to keep an adequate parts supply, failure to provide warranty work, and failure to provide adequate financial statements to Ford.

Ford testified that it had a replacement dealer to take Rose's place in Lincoln and that Ford would comply with the repurchase requirements of § 60–1430.02. Ford has met the requirements set forth in § 60–1420 for the termination of Rose's franchise. We affirm the district court's judgment upon finding no error on the record and finding that the district court's decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

AFFIRMED.

WHITE, C.J., participating on briefs.

FAHRNBRUCH and WRIGHT, JJ., not participating.