FRANKIE D. WHITE, APPELLEE, V. STATE OF NEBRASKA ET AL., APPELLANTS.

540 N.W.2d 354

Filed December 8, 1995. No. S-95-293.

Don Stenberg, Attorney General, and Charles E. Lowe for appellant.

James D. McFarland, of Burns & Associates, for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

LANPHIER, J.

The State appeals an order of the Lancaster County District Court reversing a Nebraska State Personnel Board decision under the Administrative Procedure Act, specifically, Neb. Rev. Stat. §§ 84–917 and 84–918 (Reissue 1994). The State Personnel Board had held that Frankie D. White, a corrections unit caseworker at the Nebraska State Penitentiary's medium security unit, was properly fired for refusing to take a polygraph examination. The district court held that White should not have been dismissed for failure to take a polygraph examination ordered by the director of the Department of Correctional Services (DCS). State law, specifically, Neb. Rev. Stat. § 81–1932 (Reissue 1994), outlaws mandatory polygraph tests in employment situations, but an exception is made for those involved in public law enforcement. The district court held that White was not a public law enforcement officer because that term had been defined to exclude employees of DCS. The State

appealed and petitioned to bypass the Nebraska Court of Appeals on the grounds that a constitutional question was at issue. The petition to bypass the Court of Appeals was granted.

## BACKGROUND

White was a unit caseworker at the medium security unit. The warden of the state penitentiary stated that White's duties included conducting searches of at least three bunk areas per shift, conducting four random security checks each hour, maintaining security and discipline, conducting "pat" searches of inmates, conducting inmate counts, and conducting "shakedowns" of various areas in the unit. White was also required to write incident reports on inmate behavior and to use force in potential escape situations.

When asked about his duties, White stated:

My duties as a caseworker were to observe — generally observe inmates' activities. I maintained a caseload of 10 inmates in which we devised programs to help those inmates of returning to society. We helped inmates get in the program, such as Alcoholics Anonymous, Drugs Anonymous, Narcotics Anonymous. We helped inmates get in the halfway houses. I also supervised inmates in their work details, the cleaning of the bathrooms, the living area, the day rooms. I did conduct shakedowns which is a search of an inmate or an inmate's property.

The record further showed that White's duties did not include the power of arrest, reading people their Miranda rights, or conducting criminal investigations. White was also never given any "public law enforcement" training.

In 1993, two inmates alleged that White brought marijuana into the unit and showed it to them. The unit administration investigated, and the two prisoners took and passed polygraph exams. White was then asked to take a polygraph exam. White refused. The unit administration asked for and received a directive from the director of DCS ordering White to submit to the polygraph exam. White still refused.

Disciplinary charges were initiated for White's refusing the polygraph exam. White was then fired. White filed a grievance with a hearing officer of the State Personnel Board. The hearing

officer recommended that the dismissal of White be upheld. The State Personnel Board agreed.

Pursuant to the Administrative Procedure Act, specifically, § 84–917, White appealed to the Lancaster County District Court. The court conducted a de novo review. The court found that the exception in § 81–1932 permitting employers to require employees to submit to polygraph examinations if their employment "involves public law enforcement" did not apply to White as a unit caseworker. The district court held that because White could not be forced to submit to the test, DCS had no authority to terminate his employment for his refusal to take the exam. The district court ordered White reinstated with backpay and benefits.

## ASSIGNMENTS OF ERROR

DCS assigned as errors the following:

1. The District Court erred in reversing the decision of the State Personnel Board and ordering Appellee reinstated to employment by DCS with backpay and benefits.

2. The District Court erred in determining that employees of DCS generally and unit caseworkers, such as Appellee, specifically are not involved in public law enforcement within the meaning of § 81–1932 so as to be subject to directives from their employer to take polygraph examinations.

3. The District Court erred in determining that there was no just cause for the imposition of employee discipline upon Appellee.

4. The District Court erred by not holding that the exception for employment "involv[ing] public law enforcement" in Neb. Rev. Stat. § 81–1932 (1994), on its face and as applied to Appellee, was not violative of the constitutional "right to privacy."

## STANDARD OF REVIEW

In an appeal under the Administrative Procedure Act, the appeal shall be taken in the manner provided by law for appeals in civil cases, and the judgment rendered or final order made by the district court may be affirmed, or it may be reversed, vacated, or modified for errors appearing on the record, or the

case. may be remanded for further proceedings. *Garcia v. Nebraska Dept. of Motor Vehicles, ante* p. 251, 533 N.W.2d 911 (1995); *Twiss v. Trautwein*, 247 Neb. 535, 529 N.W.2d 24 (1995); *Wagoner v. Central Platte Nat. Resources Dist.*, 247 Neb. 233, 526 N.W.2d 422 (1995).

When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Rose Equip., Inc. v. Ford Motor Co., ante* p. 344, 535 N.W.2d 404 (1995); *George Rose & Sons v. Nebraska Dept. of Revenue, ante* p. 92, 532 N.W.2d 18 (1995); *Wagoner v. Central Platte Nat. Resources Dist., supra.*

Unless there is affirmative evidence to the contrary, a reviewing court will presume that an agency has duly considered all the evidence before it. *Central Platte NRD v. State of Wyoming*, 245 Neb. 439, 513 N.W.2d 847 (1994).

## ANALYSIS

The issue is whether an employee such as White can lawfully be required to take a polygraph test. Section 81–1932 prohibits termination for refusal to take a polygraph test. An exception is made, however, for those employees involved in public law enforcement. Does White's current employment as a unit caseworker involve public law enforcement within the statutory definition?

In settling upon the meaning of a statute, an appellate court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense, it being the court's duty to discover, if possible, the Legislature's intent from the language of the statute itself. *George Rose & Sons v. Nebraska Dept. of Revenue, supra*; *State ex rel. Scherer v. Madison Cty. Comrs.*, 247 Neb. 384, 527 N.W.2d 615 (1995); *Anderson v. Nashua Corp.*, 246 Neb. 420, 519 N.W.2d 275 (1994).

In determining the meaning of a statute, the applicable rule is that when the Legislature enacts a law affecting an area which is already the subject of other statutes, it is presumed that it did

so with full knowledge of the preexisting legislation and the decisions of the Supreme Court construing and applying that legislation. *Dalition v. Langemeier*, 246 Neb. 993, 524 N.W.2d 336 (1994); *School Dist. No. 17 and Westside Comm. Schools v. State*, 210 Neb. 762, 316 N.W.2d 767 (1982). .

Three sections of chapter 81 deal with law enforcement personnel: Neb. Rev. Stat. §§ 81-1401(3)(b), 81-1932, and 81-1373(1)(f) and (g) (Reissue 1994).

Section 81-1932, enacted in 1980 and never amended, does not in itself define what type of employment involves "public law enforcement"; however, two other sections in chapter 81 do define "law enforcement." Section 81-1932, the subject of this opinion, provides in part: "No employer or prospective employer may require as a condition of employment or as a condition for continued employment that a person submit to a truth and deception examination *unless such employment involves public law enforcement.*" (Emphasis supplied.)

This court has previously recognized that § 81-1932 clearly sets forth a public policy of Nebraska prohibiting the use of a polygraph examination by an employer to deny employment. See *Ambroz v. Cornhusker Square Ltd.*, 226 Neb. 899, 416 N.W.2d 510 (1987). This same public policy applies to the continuation of employment, due to the plain language of the statute. This court has also held that § 81-1932 is a criminal statute and must be narrowly construed. *Collins v. Baker's Supermarkets*, 223 Neb. 365, 389 N.W.2d 774 (1986).

Section 81-1932 creates an exception for those involved in public law enforcement. Statutory exceptions must be strictly construed. *State ex rel. Halloran v. Hawes*, 203 Neb. 405, 279 N.W.2d 96 (1979). In *Halloran*, this court stated:

> It is a general rule of statutory construction that a proviso which operates to limit the application of the provisions of a statute general in terms should be strictly construed and held to include no case not clearly within the purpose, letter, or express terms of the proviso.

203 Neb. at 411, 279 N.W.2d at 100.

The Legislature has nowhere defined DCS employees as involved in public law enforcement.

Section 81-1932 does not modify the preexisting definition of

law enforcement officers in § 81-1401(3)(b). Section 81-1401(3)(b) was originally enacted in 1969 and was amended to substantially its present-day form in 1980. It is part of the statutes which established the Nebraska Law Enforcement Training Center to train and certify law enforcement officers in this state. Section 81-1401(3)(b) states: *"Law enforcement officer shall not include employees of the Department of Correctional Services*, probation officers under the Nebraska Probation System or appointed under section . . . . , parole officers appointed by the Parole Administrator, or employees of the Department of Revenue under section . . . ." (Emphasis supplied.)

In his current job, therefore, White is excluded by legislative statute from law enforcement training and certification.

Section 81-1373(1)(f) and (g), enacted in 1987 and not subsequently amended, a part of the State Employees Collective Bargaining Act, defines in relevant part:

(f) Protective Service, which unit is composed of institutional security personnel, *including correctional officers*, building security guards, and similar classes;

(g) *Law Enforcement, which unit is composed of employees holding powers of arrest,* including Nebraska State Patrol officers and sergeants, game wardens, fire marshal personnel, and similar classes. Sergeants, investigators, and patrol officers employed by the Nebraska State Patrol as authorized in section 81-2004 shall be presumed to have a community of interest with each other and shall be included in this bargaining unit notwithstanding any other provision of law which may allow for the contrary.

(Emphasis supplied.)

It is clear from these two separate definitions that the Legislature reiterated the definition of § 81-1401(3)(b): Law enforcement officers are those with the power of arrest. Pursuant to statutory definition, White did not hold the power of arrest and was therefore excluded from the definition of law enforcement officer. The additional qualification in § 81-1932 that the law enforcement be "public," if anything, also helps White's position.

The State is requesting that we read into § 81–1932 a definition contrary to that which the Legislature has used on two other occasions. While the definitions of law enforcement used in § 81–1401(3)(b) and § 81–1373(1)(f) and (g) are not binding when we construe § 81–1932, they certainly are persuasive. It must be presumed under our rules of statutory construction that the Legislature was aware of the definition of law enforcement officer in § 81–1401(3)(b) when it enacted § 81–1932 and that the Legislature continued the omission of DCS employees from the definition of law enforcement officer when it enacted § 81–1373(1)(f) and (g).

Under well-established rules of statutory construction, a caseworker at the medium security unit is not involved in public law enforcement within the definition of the exception in § 81–1932.

We therefore affirm the district court's finding that White in his current employment is not involved in law enforcement so as to be subject to the exclusion created by § 81–1932.

## CONCLUSION

We find that the decision of the district court conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. There being no error on the record, the order of the district court is hereby affirmed.

AFFIRMED.