JANIE KNOWLTON, APPELLANT, V. MARY DEAN HARVEY, DIRECTOR, NEBRASKA DEPARTMENT OF SOCIAL SERVICES, AND THE NEBRASKA DEPARTMENT OF SOCIAL SERVICES, APPELLEES.

545 N.W.2d 434

Filed March 29, 1996.   No. S-93-1095.

Milo Alexander for appellant.

Don Stenberg, Attorney General, and Royce N. Harper for appellees.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, CONNOLLY, and GERRARD, JJ.

FAHRNBRUCH, J.

Nebraska's Department of Social Services (DSS) found that Janie Knowlton was ineligible to continue receiving benefits under the Aid to Families with Dependent Children (AFDC) program.

Pursuant to Nebraska's Administrative Procedure Act, Knowlton filed in the district court for Douglas County a petition for judicial review of DSS' decision.

Although the district court correctly found that because of her migraine headaches Knowlton's ability to support and care for her children has been substantially reduced, the court erred in determining that Knowlton's disability would not last for a period of at least 30 days.

We hold that, under federal law, Knowlton is entitled to receive benefits under the AFDC program.

## ASSIGNMENTS OF ERROR

Restated and summarized, Knowlton claims that the district court erred in finding that for the purposes of AFDC (1) "incapacity" requires that the claimant's symptoms, rather than an illness or condition causing the symptoms, must persist for a continuous period of at least 30 days, and (2) Knowlton is not incapacitated.

## STANDARD OF REVIEW

On an appeal under the Administrative Procedure Act, an appellate court reviews the judgment of the district court for errors appearing on the record and will not substitute its factual findings for those of the district court where competent evidence supports those findings. *George Rose & Sons v. Nebraska Dept. of Revenue*, 248 Neb. 92, 532 N.W.2d 18 (1995). See Neb. Rev. Stat. § 84–918 (Reissue 1994). When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Wagoner v. Central Platte Nat. Resources Dist.*, 247 Neb. 233, 526 N.W.2d 422 (1995).

As to questions of law, an appellate court has an obligation to reach a conclusion independent from a trial court's conclusion in a judgment under review. *Unland v. City of Lincoln*, 247 Neb. 837, 530 N.W.2d 624 (1995).

## FACTS

Knowlton has had a long history of severe migraine headaches. In its brief, DSS recognizes that since 1989, Knowlton has received AFDC benefits. After a final hearing before DSS, its director on March 25, 1993, entered an order finding that Knowlton experiences migraine headaches for 3 to 5 days a week for 3 out of every 4 weeks. The director also found that these headaches were characterized by visual disturbances, nausea, vomiting, and blackouts, sometimes causing Knowlton to be bedridden for up to 5 days. Sometimes

the vomiting included blood. Knowlton testified that during the 6-month period before DSS' final hearing, she was hospitalized and received treatment twice and went to the Methodist Hospital emergency room in Omaha where she received treatment 17 times because of the severity of her headaches. She testified that she had called Methodist Hospital and that it verified the number of times she had been treated in its emergency room. Although the director was not present at the final DSS hearing and, therefore, did not observe Knowlton testify, the director discounted Knowlton's testimony because it was not totally corroborated in her primary physician's report. The DSS director found that in any given month, Knowlton saw her regular physician two or three times.

The record reflects that when Knowlton gets migraine headaches, she is unable to care for her children. Although Knowlton had not attempted any kind of employment for over a year and a half, she did attempt to engage in volunteer work at her children's school. She stopped her volunteer efforts because 50 percent of the time headaches and nausea prevented her from fulfilling her commitment. In her last remunerative employment, Knowlton provided care for children. She testified without objection and without contradiction that both of her physicians advised her that she could no longer engage in that type of employment.

DSS' State Review Team (SRT) had, since 1989, periodically reviewed Knowlton's eligibility and found her qualified to receive AFDC benefits. The most recent review was initiated in December 1992. As part of that review, SRT considered the first page of a purported December 1992 report of Dr. Robert R. Sundell, a neurologist who first treated Knowlton in 1990 after Knowlton suffered a stroke. Substantial portions of medical data purportedly provided by Dr. Sundell reveal that Dr. Sundell primarily had treated Knowlton for pain in her low back, right buttock, and right leg, all of which Dr. Sundell thought were independent of Knowlton's migraine headaches. Medical reports reflect that Knowlton's neurological problems were caused by two automobile accidents. The medical records further reflect that Dr. Robert Underriner was the primary physician treating Knowlton's migraine headaches and that Dr. Sundell was the

primary treating physician and consultant for Knowlton's neurological problems, although there were occasions when he prescribed and increased medication for Knowlton's headaches. Attached to the questionnaire purportedly returned to DSS by Dr. Sundell were medical notes and other related medical correspondence regarding Knowlton. A DSS questionnaire, which the record reflects was not signed by Dr. Sundell, consisted, in part, of six questions. The questions and answers are as follows:

1. Is the individual able to engage in his/her previous type [of] employment? unknown what former employment was. [S]ee below for other questions

2. Does he/she have the capacity to engage in any type of employment? yes

3. Is he/she able to participate with vocational rehabilitation at this time? yes . . .

4. In your opinion, is this individual disabled? no

5. When was the onset of this impairment? first saw in 1980 for headaches

6. How long do you expect the impairment to last? *indeterminant* [sic]

(Emphasis supplied.)

The six-question questionnaire does not contain Dr. Sundell's signature, but only the signature of a Theresa Baxter, apparently a DSS employee. The second page of the questionnaire is not included in the record. Furthermore, the record does not indicate which ailment or ailments are the basis for Dr. Sundell's purported answers.

Apparently, DSS found that Knowlton experienced migraine headaches 3 to 5 days a week for 3 out of every 4 weeks. Nevertheless, DSS' director determined that Knowlton was "not incapacitated" and terminated her AFDC benefits. Therefore, Knowlton petitioned DSS for a "fair hearing" to review that decision.

Before the final DSS hearing, Knowlton submitted to SRT a DSS questionnaire completed January 29, 1993, by Dr. Underriner, her primary care physician since, at least, 1980. In summarized responses to the identical questions asked of Dr. Sundell, Dr. Underriner found that (1) Knowlton was not able

to engage in her previous employment, (2) she did not have the capacity to engage in any type of employment or vocational rehabilitation, (3) she was disabled, (4) her impairment began over 10 years ago, and (5) he expected the duration of Knowlton's impairment caused by her migraine headaches would be permanent. Dr. Underriner further reported that Knowlton's prognosis and rehabilitation potential were "poor" due to her "severe" migraine headaches, which are accompanied by nausea and vomiting. In regard to the weakness in Knowlton's right side, Dr. Underriner stated that its anticipated duration was "unknown."

SRT's report to DSS' hearing officer noted that, regarding Dr. Underriner's questionnaire responses, Knowlton

> continues to have intermittent migraine headaches for which she receives medication. . . . [Knowlton's primary care physician's report] indicates that "when [Knowlton] has frequent migraine [she] is in bed for day+, needs injection due to vomiting." This did not indicate to the Review Team that this client has a medical condition incapacitating her for 30 days continuously as is required for ADC–I eligibility.

An administrative hearing was held, and the decision of SRT was affirmed in an order of the director of DSS dated March 25, 1993.

Knowlton petitioned the district court for Douglas County to review the decision of DSS' director. Knowlton alleged that DSS applied a definition of "incapacitated" which was contrary to both state and federal law and that the hearing officer's finding was unsupported by competent, material, and substantial evidence in view of the entire record, and was arbitrary and capricious.

The district court found that

> the description of the incapacity under both [federal and state] regulations is one which must substantially reduce the parent[']s ability to support or care for the child. Medical reports substantiate this aspect of the regulation, but there is no medical evidence that the disability is expected to last for a period of at least 30 days.

The district court affirmed DSS' determination that Knowlton was not incapacitated. Knowlton timely appealed the district court order to the Nebraska Court of Appeals. To control the caseloads of the appellate courts of Nebraska, we removed the case from the Court of Appeals' docket to our own.

## ANALYSIS

The AFDC program is a creation of federal statute administered by the states under a scheme of cooperative federalism. See *King v. Smith*, 392 U.S. 309, 88 S. Ct. 2128, 20 L. Ed. 2d 1118 (1968). It is designed to furnish financial assistance, rehabilitation, and other services to needy children and the parents or relatives with whom they are living, to help maintain and strengthen family life, and to help families become self-supporting. See, 42 U.S.C. § 601 (1994); *Shea v. Vialpando*, 416 U.S. 251, 94 S. Ct. 1746, 40 L. Ed. 2d 120 (1974).

The federal standard for determining incapacity for AFDC purposes provides:

> "Physical or mental incapacity" of a parent shall be deemed to exist when one parent has a physical or mental defect, illness, or impairment. The incapacity shall be supported by competent medical testimony and must be of such a debilitating nature as to reduce substantially or eliminate the parent's ability to support or care for the otherwise eligible child and be expected to last for a period of at least 30 days. In making the determination of ability to support, the agency shall take into account the limited employment opportunities of handicapped individuals.

45 C.F.R. § 233.90(c)(iv) (1995).

Nebraska's counterpart to the above standard is found in the Nebraska DSS manual and provides that "[p]hysical or mental incapacity" means any physical or mental illness, impairment, or defect which is so severe as to substantially reduce or eliminate the parent's ability to provide support or care for a child. The incapacity must be expected to last at least 30 days. 468 Neb. Admin. Code, ch. 2, § 005.03A (1992).

The district court concluded that medical reports in the record substantiate that Knowlton's ability to support or care for her children remains substantially reduced. On appeal, DSS agrees with this conclusion. The record reflects substantial competent medical evidence to support the district court's conclusion that Knowlton's ability to support or care for her children has been substantially reduced.

However, the district court's finding that "there is no medical evidence that the disability is expected to last for a period of at least 30 days" is not supported by the record. Competent medical evidence in the record reflects that Knowlton has a long history of severe migraine headaches. She experiences headaches approximately 3 to 5 days a week, 3 out of every 4 weeks. These headaches are characterized by visual disturbances, nausea, vomiting, and blackouts, sometimes causing Knowlton to be bedridden for up to 5 days at a time.

When Knowlton's physicians were asked in the DSS questionnaire how long they expected her impairment to last, her primary care physician, Dr. Underriner, answered "permanently" and her neurologist, Dr. Sundell, purportedly answered "indeterminant [sic]." The record reflects that Dr. Sundell primarily treated Knowlton for neurological symptoms independent of the headaches. The record does not reflect that the answers to the DSS questionnaire purportedly from Dr. Sundell included Knowlton's complaint of migraine headaches for which he was not the primary treating physician. Thus, the record does not support the DSS and the trial court findings that Dr. Sundell determined that Knowlton's migraine headaches, as opposed to her neurological ailments, were of an indeterminate duration.

Moreover, "indeterminate" means that which is uncertain, or not particularly designated. Black's Law Dictionary 771 (6th ed. 1990). See Webster's Third New International Dictionary, Unabridged 1148 (1993). Of the two treating physicians, only Dr. Underriner considered Knowlton's impairment permanent on the basis of her severe migraine headaches. Dr. Underriner considered Knowlton's neurological ailments to be of an unknown duration. As to Dr. Sundell's purported report, there is great uncertainty as to whether his "indeterminate duration"

opinion referred to Knowlton's migraine headaches or to her neurological problems resulting from two motor vehicle accidents. There is also great uncertainty as to whether in Dr. Sundell's opinion any impairment that Knowlton has would last more or less than 30 days. As a result, Dr. Sundell's purported report does not support the decision of DSS and that of the district court to deny AFDC benefits to Knowlton.

It appears that the district court interpreted the term "disability" to mean the time periods when Knowlton was actually suffering from her migraine headaches and unable to provide care or support for her dependent children. This interpretation, and the resultant final order of the district court, evidences a misinterpretation of the 30–day duration requirement.

The 30–day requirement was added to the federal regulation effective November 22, 1974. In the notice implementing the 30–day requirement, the federal Department of Health and Human Services stated that there must be a causal relationship between the parent's incapacity and the child's deprivation of support or care. As to the 30–day requirement, the department stated that "[t]he 30 days is not intended to be a 'waiting period'. Expected duration is pertinent to 'causal relationship' and to 'substantially.' A condition lasting only a few days would not usually result in substantial deprivation." See 39 Fed. Reg. 34037 (1974).

There appears to be no state or federal court that has addressed the 30–day duration requirement for the purposes of determining AFDC incapacity. Several courts have, however, addressed an analogous issue in the context of Social Security and Supplemental Security Income (SSI) disability benefits. The definition of "disability" for the purposes of Social Security and SSI is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (1994).

In *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986), the claimant suffered from chronic schizophrenia and other mental

illness. Although he had been in and out of hospitals and mental institutions over a 10-year period, he had been employed for various short periods of time. The Social Security Administration denied the claimant's application for Social Security benefits because it determined that he had not met the 12-month duration requirement. The *Singletary* court reversed and remanded, finding that the statute requires that it is the impairment only that must last for a continuous period, not the time periods when a claimant is unable to work. The court noted that the "ability of a claimant to engage in work for limited periods of time certainly calls into question the severity of the impairment, but it does not necessarily determine whether the impairment, however severe, has lasted for at least 12 months." *Id.* at 821.

By the same reasoning, courts have found that symptom-free intervals of those suffering from mental illness do not necessarily compel a finding that a claimant is not disabled. See, *Yawitz v. Weinberger*, 498 F.2d 956 (8th Cir. 1974); *Klug v. Weinberger*, 514 F.2d 423 (8th Cir. 1975). These mental illnesses are marked with symptoms of an uncertain duration and are marked by an impending possibility of relapse. *Lebus v. Harris*, 526 F. Supp. 56 (N.D. Cal. 1981). Because of the nature of these illnesses, courts have concluded that a claimant whose claim is based on a mental condition does not have to show a 12-month period of impairment unmarred by any symptom-free interval. See *Singletary v. Bowen, supra.* See, e.g., *Miller v. Heckler*, 747 F.2d 475 (8th Cir. 1984); *Dreste v. Heckler*, 741 F.2d 224, 226 n.2 (8th Cir. 1984).

The reasoning applied by the above federal courts in construing the duration requirement and defining "disability" for the purposes of Social Security or SSI is applicable to the instant case.

Under the district court's interpretation of the 30-day duration requirement, a claimant suffering an illness which does not manifest its symptoms for a continuous period of 30 days would be ineligible for AFDC benefits. This is so, regardless of the claimant's substantial reduction in ability to care for or support a dependent child. Under the district court's rationale, a claimant suffering from epilepsy who experiences a pattern of

seizures separated by periods of remission could never be deemed incapacitated for the purposes of AFDC. This is true, regardless of the claimant's inability to support or care for a dependent child, unless the claimant was in a state of continuous seizure for a period of 30 days. Such a result would clearly be in conflict with the aims of the AFDC program which, among other things, is to encourage the care of dependent children in their own homes by parents who experience a substantial reduction in their ability to care for or support their dependent children. See, 42 U.S.C. 601; 45 C.F.R. § 233.90(c)(iv). The federal regulation governing the definition of incapacity for the purposes of AFDC focuses on the effect of the parental incapacity on the ability to support or care for dependent children and emphasizes a substantial reduction or an elimination of the support ability. See, *Tappen v. State, Dept. of Health and Welfare*, 98 Idaho 576, 570 P.2d 28 (1977); *Timmons v Social Services Dept*, 89 Mich. App. 330, 280 N.W.2d 515 (1979). In Knowlton's case, both DSS' and the district court's interpretations focus on whether the symptoms of a disability are apparent for 30 continuous days, rather than whether the disability itself exists for a period of 30 days. By imposing this symptomatic 30–day requirement on Knowlton, regardless of the substantial reduction of Knowlton's ability to provide care or support for her children, the district court impermissibly narrowed the definition of incapacity for the purposes of AFDC.

The manner in which a state administers a federal assistance program must be consistent with federal law. See, e.g., *Shea v. Vialpando*, 416 U.S. 251, 94 S. Ct. 1746, 40 L. Ed. 2d 120 (1974). A state eligibility standard that excludes persons eligible for assistance under federal AFDC standards violates the Social Security Act and is therefore invalid under the Supremacy Clause. *Townsend v. Swank*, 404 U.S. 282, 92 S. Ct. 502, 30 L. Ed. 2d 448 (1971); *King v. Smith*, 392 U.S. 309, 88 S. Ct. 2128, 20 L. Ed. 2d 1118 (1968).

The decision of the district court for Douglas County affirming DSS' denial of AFDC benefits to Knowlton is reversed because the denial does not conform with the law, is not supported by competent evidence, and is unreasonable. The

district court is directed to reinstate Knowlton's eligibility for AFDC benefits as of the date her eligibility was terminated.

REVERSED AND REMANDED WITH DIRECTION.

WRIGHT, J., not participating.