JOHN RAINBOLT, APPELLEE, V. STATE OF NEBRASKA AND THE
NEBRASKA DEPARTMENT OF SOCIAL SERVICES, APPELLANTS.

550 N.W.2d 341

Filed July 12, 1996.   No. S-94-805.

Don Stenberg, Attorney General, and Charles E. Lowe for
appellants.

Lynnette Z. Boyle, of Tietjen, Simon & Boyle, for appellee.

WHITE, C.J., FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY,
and GERRARD, JJ.

LANPHIER, J.

John Rainbolt, appellee, was dismissed from his employ-
ment as a protective services worker by appellant the Nebraska
Department of Social Services (DSS). DSS charged Rainbolt

with inefficiency, incompetence or neglect in the performance of a home evaluation, and failure to maintain a satisfactory working relationship with his supervisor concerning his custodial placement of a juvenile.

Subsequent to the termination of his employment, Rainbolt filed a grievance with the Nebraska State Personnel Board. A hearing officer recommended reinstatement. However, the State Personnel Board found that DSS had just cause to dismiss Rainbolt. Rainbolt filed a petition on appeal in Lancaster County District Court against DSS and the State of Nebraska for review of the decision of the State Personnel Board under the Administrative Procedure Act, specifically Neb. Rev. Stat. § 84-918 (Reissue 1994). The district court, following de novo review, found that DSS did not have just cause to dismiss Rainbolt and ordered Rainbolt reinstated with backpay. DSS and the State appealed to the Nebraska Court of Appeals. We removed the case to our docket pursuant to our power to regulate the caseloads of the lower courts. We affirm.

## BACKGROUND

From September 1990 until March 1992, Rainbolt was employed by DSS as a protective services worker. In February and March 1992, employee disciplinary charges were brought against Rainbolt. The charges alleged inefficiency, incompetence or neglect in the performance of duties, and failure to maintain satisfactory working relationships. The charges were brought by Rainbolt's supervisor, Patricia Squires, and arose out of problems surrounding a home evaluation performed by Rainbolt for child custody purposes and lapses in communication between Rainbolt and Squires concerning Rainbolt's custodial placement of a juvenile.

As to the allegation concerning the home evaluation, Rainbolt completed his first home evaluation regarding the placement of juveniles from out of state on a form provided by DSS. After filling out the form, he attempted to turn it in to Squires. Squires was out of the office, and following her instructions, Rainbolt submitted the report to Squires' superior. Squires' superior signed the report. It later came to

Squires' attention that the subject of the home evaluation claimed the form contained inaccurate information.

The other allegations by DSS concerned events relating to the placement of a juvenile, which occurred amid the earlier disciplinary action brought by Squires against Rainbolt concerning the home evaluation. In January 1992, DSS was seeking appropriate placement for a juvenile who had been receiving in-patient treatment at a psychiatric hospital. Rainbolt was assigned the responsibility of placing the juvenile in a long-term group home. The group home had no room; thus Rainbolt was unable to make the desired placement. He then placed the juvenile in a short-term facility managed by the same organization as the group home. There are contradictions in the testimony, but it is clear that Squires, after several conversations with Rainbolt, was under the impression that the juvenile was in the long-term facility. Squires discovered that the juvenile had never been in the long-term facility when the juvenile ran away, the juvenile was found, and Squires attempted to get the juvenile "accepted back" into the long-term facility. Brief for appellant at 13.

After the investigation into the charges against Rainbolt, DSS dismissed him. Rainbolt filed a grievance of the decision with the State Personnel Board, and a hearing officer was appointed to the case. During the hearing, Squires' superior testified that Rainbolt stated that he had misled Squires. The superior also testified that Rainbolt did not state that he had intentionally misled Squires. The hearing officer subsequently recommended reinstatement.

DSS appealed to the State Personnel Board, which upheld DSS' termination decision, stating, "[We voted to] accept the factual findings of the Hearing Officer, but not to accept his recommendation of reinstatement and to agree with the agency as to [Rainbolt's] termination from employment, as the official decision of the State Personnel Board."

Rainbolt appealed to the district court, which found that (1) DSS did not have just cause to impose discipline with respect to the home evaluation incident, specifically stating, "If these matters were not so serious, the basis for Squire[s'] conclusions would be comical"; (2) DSS did have just cause to

impose discipline based upon the incident involving placement of the juvenile; and (3) dismissal from employment was too severe a sanction under the circumstances. The court stated:

> While the hearing officer did conclude that the facts supported the contention of DSS that Rainbolt had intentionally misled Squires, this court, while not disagreeing entirely with this conclusion, does find that such conclusion certainly is a view more favorable to DSS than the testimony may warrant. However, the hearing officer concluded that the transgression by Rainbolt was not sufficiently serious to warrant discharge. This court agrees.
>
> . . . Rainbolt was under substantial pressure to find a placement for the juvenile. Squires was out of the office on annual leave or at meetings at times critical to the placement. The placement at Freeway [the short-term facility] was not inappropriate and it is easy to see how the description of the various facilities could be confused, particularly in view of the lack of communications in the office. Specifically this court notes the following:
>
> a. Although regularly scheduled meetings were set up between Rainbolt and Squires, Squires testified that they often times did not occur.
>
> b. While Squires testified she had an "open door" policy with her employees, she also stated that she was aware that Rainbolt was hesitant to talk with her, yet she made no attempt to resolve the conflict with him and only minimal effort to keep the lines of communication open.
>
> c. There was confusion over the use of the term "YSS" and whether it denoted the group home [the long-term facility], the Freeway home, or the umbrella organization that established the various homes. While there was testimony that "YSS" was only used to refer to the umbrella organization, Squires herself uses the term "YSS" to refer to the Freeway home during her testimony.
>
> . . . While Rainbolt's actions may warrant discipline, they do not warrant dismissal. There were other forms of discipline available to DSS that could have appropriately dealt with the situation. The labor contract between the

State and Rainbolt provides that "[t]he level of discipline imposed shall be based on the nature and severity of the infraction. The employer shall not discipline an employee without just cause, recognizing and considering progressive discipline." Rainbolt had not been disciplined previously and had received above average reviews for his performance.

## ASSIGNMENTS OF ERROR

The State and DSS argue that the court erred (1) in reversing the decision of the State Personnel Board and ordering Rainbolt reinstated to employment by DSS with backpay and benefits, (2) in substituting its judgment as to the proper degree of discipline to be imposed upon Rainbolt in connection with the juvenile placement incident for that of the agency head, and (3) in finding that DSS did not have just cause for imposing discipline upon Rainbolt in connection with the home evaluation incident.

## STANDARD OF REVIEW

The judgment rendered or final order made by the district court in an Administrative Procedure Act appeal may be reversed, vacated, or modified by the Supreme Court or the Court of Appeals for errors appearing on the record. *Val-Pak of Omaha v. Department of Revenue*, 249 Neb. 776, 545 N.W.2d 447 (1996); *Smith v. State*, 248 Neb. 360, 535 N.W.2d 694 (1995); *Rose Equip., Inc. v. Ford Motor Co.*, 248 Neb. 344, 535 N.W.2d 404 (1995); *Sunrise Country Manor v. Neb. Dept. of Soc. Servs.*, 246 Neb. 726, 523 N.W.2d 499 (1994).

On an appeal from the district court under the Administrative Procedure Act, an appellate court reviews the judgment for errors appearing on the record and will not substitute its factual findings for those of the district court where competent evidence supports those findings. *Knowlton v. Harvey*, 249 Neb. 693, 545 N.W.2d 434 (1996); *Metro Renovation v. State*, 249 Neb. 337, 543 N.W.2d 715 (1996); *George Rose & Sons v. Nebraska Dept. of Revenue*, 248 Neb. 92, 532 N.W.2d 18 (1995).

When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Knowlton, supra*; *Metro Renovation, supra*; *White v. State*, 248 Neb. 977, 540 N.W.2d 354 (1995).

## ANALYSIS

DSS contends that the district court's power of review over the decision of the State Personnel Board did not include the ability to modify the decision of the board and order Rainbolt reinstated with backpay and benefits. We disagree.

Under Neb. Rev. Stat. § 84-917(5) (Reissue 1994), when a petition instituting proceedings for review under the Administrative Procedure Act is filed in the district court on or after July 1, 1989, the review shall be conducted by the court without a jury de novo on the record of the agency. *Metro Renovation, supra.*

In its de novo review of the decision of the administrative agency, the level of discipline imposed by the agency is subject to the district court's power to affirm, reverse, or modify the decision of the agency or to remand the case for further proceedings. See, *Lee v. Nebraska State Racing Comm.*, 245 Neb. 564, 513 N.W.2d 874 (1994); *Davis v. Wright*, 243 Neb. 931, 503 N.W.2d 814 (1993); § 84-917(6)(b).

In addition, the change in the level of discipline by the district court was based on a factual finding following its de novo review that some of the cause for the alleged misleading that Rainbolt did was due to a "failure to communicate" rather than intent on Rainbolt's part. Because there is competent evidence in the record to support same, we are obligated to accept that finding under our standard of review. Therefore, we find this assignment of error to be without merit.

The State and DSS further argue that the court's reasoning, evidenced in its order, is erroneous in its finding that DSS did not have just cause for imposing discipline upon Rainbolt in connection with the home evaluation incident. The statement of the district court of the reasons for its order, even if wrong,

is not necessarily cause for reversal when the standard of review is error appearing in the record. In our review of the district court's decision, we need not reanalyze each proffered reason for the district court's decision following its de novo review.

The proper scope of our review is whether the decision of the district court is supported by the law and the record. After a review of the record, we find that the decision of the district court regarding the discipline of Rainbolt for the home evaluation incident is in conflict. There is, however, evidence in the record to support the district court's decision; therefore, the judgment is consistent with the applicable law, is supported by the record, and is neither arbitrary, capricious, nor unreasonable.

## CONCLUSION

Finding that the decision of the trial court conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable, we affirm. Rainbolt's motion for attorney fees of $1,836 is granted.

AFFIRMED.

CAPORALE, J., participating on briefs.

CONNOLLY, J., dissenting.

Although the majority has set forth the proper standard of review for errors appearing on the record, it has failed to properly apply it. When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Keys v. Department of Motor Vehicles*, 249 Neb. 964, 546 N.W.2d 819 (1996); *Knowlton v. Harvey*, 249 Neb. 693, 545 N.W.2d 434 (1996); *Metro Renovation v. State*, 249 Neb. 337, 543 N.W.2d 715 (1996).

First, I would like to clarify what I assume to be a misstatement by the majority. The majority states that "[t]he statement of the district court of the reasons for its order, *even if wrong*, is not necessarily cause for reversal when the standard of review is error appearing in the record." (Emphasis sup-

plied.) Surely, the majority does not mean to say that if the court's reasons are incorrect, we may not reverse. If this statement were true, which it is not, it would pervert the entire review process.

Furthermore, the majority states that

> the change in the level of discipline by the district court was based on a factual finding following its de novo review that some of the cause for the alleged misleading that Rainbolt did was due to a "failure to communicate" rather than intent on Rainbolt's part. Because there is competent evidence in the record to support same, we are obligated to accept that finding under our standard of review.

The majority correctly determines whether the district court's decision is supported by competent evidence, but then fails to consider the last part of the standard—that the decision is "neither arbitrary, capricious, nor unreasonable."

I believe that the district court's decision was unreasonable. Presented with a case in which an employee of DSS lied to his supervisor, the district court decided that termination of the employee was "too severe." I do not agree that termination was "too severe" after Rainbolt lied to his supervisor about a crucial component of his work—the placement of a juvenile.

The need for open, truthful communications is especially compelling under the facts of this case because Rainbolt worked as a protective services worker—one who is charged with the care, custody, and placement of juveniles. A protective services worker who chooses to "mislead," or lie to, a supervisor potentially places the juvenile about whom he is lying in danger of failing to receive vital services. The consequences of Rainbolt's misrepresentations in the placement incident were not only that the juvenile failed to receive the proper care, but that he actually ran away from the short-term facility. Rainbolt continued his prevarication by pretending that the juvenile had been placed with the group home. However, he had not. In short, by the time DSS discovered Rainbolt's series of lies, it had no appropriate alternative except to terminate him.

In his brief, Rainbolt even acknowledges his motive in "misleading" his supervisor. Rainbolt argues that he had been placed in a "difficult" position; that he had already received the statement of charges concerning the home evaluation incident and "believed . . . Squires was attempting to make a case against him." Brief for appellee at 11. Rainbolt also admits that he "may have said that [the juvenile] had run away from the group home," brief for appellee at 8, even though he knew that he had never placed the juvenile in the group home.

I find the majority's decision particularly puzzling, given the fact that we have been critical of DSS in the past for failing to be truthful when giving information to foster parents. See, *Anderson/Couvillon v. State*, 248 Neb. 651, 538 N.W.2d 732 (1995); *Haselhorst v. State*, 240 Neb. 891, 485 N.W.2d 180 (1992). It appears that the majority opinion creates an inconsistency: admonishing DSS to be truthful and make full disclosure in the placement of juveniles, while allowing DSS employees who lie about that very topic to remain in the workplace. I would reverse the decision of the district court.

GERRARD, J., joins in this dissent.