METROPOLITAN UTILITIES DISTRICT OF OMAHA, A MUNICIPAL
CORPORATION AND POLITICAL SUBDIVISION OF THE STATE OF
NEBRASKA, APPELLANT, V. M. BERRI BALKA, TAX COMMISSIONER
OF THE STATE OF NEBRASKA, AND STATE OF NEBRASKA,
DEPARTMENT OF REVENUE, APPELLEES.

560 N.W.2d 795

Filed March 28, 1997.   No. S-95-588.

Ronald E. Bucher for appellant.

Don Stenberg, Attorney General, and L. Jay Bartel for appellees.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, and GERRARD, JJ., and SPRAGUE, D.J.

SPRAGUE, D.J.

Plaintiff-appellant Metropolitan Utilities District of Omaha (MUD) filed a claim seeking a $159,931.21 refund of Nebraska retail sales tax paid on electricity MUD purchased between October 1, 1991, and September 30, 1992, to use in its business. The Tax Commissioner (Commissioner) approved $14,426.92 of the requested refund, but denied the remainder of the claim because MUD's use of electricity to transport treated water from two treatment facilities into storage did not constitute "manufacturing" or "processing" under Neb. Rev. Stat. § 77-2704.13 (Cum. Supp. 1992), and therefore, the electricity was not exempt from Nebraska retail sales tax. On appeal, the district court for Lancaster County affirmed the Commissioner's decision. We affirm.

## ASSIGNMENTS OF ERROR

MUD's four assignments of error can be consolidated into the following issue: Whether Nebraska Sales and Use Tax Regulation 1-089.02A(1), 316 Neb. Admin. Code, ch. 1, § 089.02A(1) (1994), is consistent with § 77-2704.13.

## STANDARD OF REVIEW

On an appeal under the Administrative Procedure Act, an appellate court reviews the judgment of the district court for errors appearing on the record and will not substitute its factual findings for those of the district court where competent evidence supports those findings. *Rainbolt v. State*, 250 Neb. 567, 550 N.W.2d 341 (1996); *Knowlton v. Harvey*, 249 Neb. 693, 545 N.W.2d 434 (1996).

When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Rainbolt v. State, supra*; *Keys v. Department of Motor Vehicles*, 249 Neb. 964, 546 N.W.2d 819 (1996).

Statutory interpretation is a matter of law in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below. *Van Ackeren v. Nebraska Bd. of*

*Parole*, 251 Neb. 477, 558 N.W.2d 48 (1997); *Snipes v. Sperry Vickers*, 251 Neb. 415, 557 N.W.2d 662 (1997).

## FACTS

MUD is a municipal corporation of the State of Nebraska engaged in the business of water treatment and distribution. The MUD water treatment system (1) obtains raw water from the Missouri River and wells along the Platte River; (2) transforms the raw water into treated water using sedimentation, clarification, disinfection, and filtration techniques; (3) transports the treated water from a treatment facility into covered storage tanks; (4) transports the treated water from storage into a distribution system; and (5) distributes the treated water to Omaha and the surrounding area.

MUD pays Nebraska sales tax on the electricity it purchases to transport treated water from its treatment facilities into storage. Between October 1, 1991, and September 30, 1992, MUD paid $159,931.21 in sales tax on electricity—a majority of which was purchased to transport treated water into storage at three of its treatment facilities: the "Platte River Plant," the "Florence Pumping Station," and the "Liquified Natural Gas Plant."

As a result, in June 1993, MUD filed a "Claim for Overpayment of Sales and Use Tax" form with the Department of Revenue, seeking a $159,931.21 sales tax refund. MUD contended that § 77-2704.13 permitted a refund of state sales tax because "[m]ore than 50 percent" of the amount of electricity purchased for use at its treatment facilities "was used . . . directly in processing, manufacturing, or refining tangible personal property." Section 77-2704.13 provides, in relevant part:

> Sales and use taxes shall not be imposed on the gross receipts from the sale, lease, or rental of and the storage, use, or other consumption in this state of:
>
> . . . .
>
> (2) Sales and purchases of such energy sources or fuels . . . when more than fifty percent of the amount purchased *is for use directly in processing, manufacturing, or refining* tangible personal property, in the generation of electricity, or by any hospital.

(Emphasis supplied.)

The Commissioner approved a $14,426.92 refund for sales tax MUD paid on electricity it purchased for use at the Liquified Natural Gas Plant but denied a refund of state sales tax on the electricity MUD purchased to use at the Platte River Plant and the Florence Pumping Station because, according to the record, more than 50 percent of the electricity used at these two treatment facilities went into "high service pumping," i.e., energy expended exclusively to transport treated water from the treatment facility into storage. Furthermore, citing § 089.02A(1), the Commissioner determined that the electricity MUD used at the Platte River and Florence treatment facilities was used merely to transport already treated water from a treatment facility into storage rather than for manufacturing or processing and that, therefore, the purchase of electricity was not exempt from sales tax under § 77-2704.13.

MUD appealed the Commissioner's decision to the district court for Lancaster County. After a hearing on the record, the district court affirmed the Commissioner's decision. The court found that the electricity at issue was "[purchased and] used [by MUD] merely to [transport] an already finished product [treated water] from the [Platte River and Florence treatment facilities into storage]." The court also concluded that the water underwent no change in form after being transformed from raw water into treated, drinkable water.

MUD appealed the judgment of the district court. We removed the case to this court's docket pursuant to the authority granted to us by Neb. Rev. Stat. § 24-1106(3) (Reissue 1995) to regulate the dockets of the Nebraska Court of Appeals and this court.

## ANALYSIS

MUD contends that the district court erred in failing to find § 089.02A to be inconsistent with § 77-2704.13. The issue in this matter is whether MUD's use of electricity to transport treated water from its Platte River and Florence treatment facilities into storage warranted an exemption from state sales tax under § 77-2704.13.

In general, statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are

plain, direct, and unambiguous. See, *PSB Credit Servs. v. Rich*, 251 Neb. 474, 558 N.W.2d 295 (1997); *Memorial Hosp. of Dodge Cty. v. Porter*, 251 Neb. 327, 557 N.W.2d 21 (1996). Specifically, tax exemption provisions are to be strictly construed, and their operation will not be extended by construction. Property which is claimed to be exempt must clearly come within the provision granting exemption from taxation. *Omaha Pub. Power Dist. v. Nebraska Dept. of Revenue*, 248 Neb. 518, 537 N.W.2d 312 (1995); *Nebraska State Bar Found. v. Lancaster Cty. Bd. of Equal.*, 237 Neb. 1, 465 N.W.2d 111 (1991). Moreover, one claiming an exemption from taxation of the claimant or claimant's property must establish entitlement to the exemption, because a statute conferring an exemption from taxation is strictly construed. See, *Omaha Pub. Power Dist., supra; Nebraska State Bar Found., supra.*

Under its authority to adopt regulations implementing the sales and use tax statutes, the Department of Revenue promulgated § 089.02A(1) which provides, in relevant part: "[Manufacturing or processing is] an action or series of actions performed upon tangible personal property, either by hand or machine, which results in that tangible personal property being reduced or transformed into a different state, quality, form, property, or thing."

Although construction of a statute by a department charged with enforcing it is not controlling, considerable weight will be given to such a construction, particularly when the Legislature has failed to take any action to change such an interpretation. *Omaha Pub. Power Dist., supra; McCaul v. American Savings Co.*, 213 Neb. 841, 331 N.W.2d 795 (1983).

Section 089.02A(1) is congruous with the generally accepted definition of manufacturing and processing. See, e.g., 68 Am. Jur. 2d *Sales and Use Tax* § 146 at 140 (1993) (stating that "[t]he terms 'manufacturing' and 'processing' imply essentially a transformation or conversion of material or things into a different state or form from that in which they originally existed— the actual operation incident to changing them into marketable products"); *So. Sioux Cty. Rural Water v. Dept. of Rev.*, 383 N.W.2d 585 (Iowa 1986) (concluding that pumping of treated water into holding tanks for eventual distribution involves

delivery of finished product and that delivery of product does not involve "processing"; electricity used subsequent to water treatment process was merely used to preserve treated water for distribution). We hold therefore, as a matter of law, that the definitions of "manufacturing" and "processing" contained in § 089.02A are in conformance with § 77-2704.13.

In interpreting § 77-2704.13, we consider whether the transportation stage of MUD's water treatment operation involves the manufacturing or processing of water according to § 089.02A(1), thus permitting MUD to obtain a refund of sales tax paid on the electricity it purchased and used to move treated water from its Platte River and Florence treatment facilities into storage.

MUD admits that the treated water pumped from its Platte River and Florence treatment facilities undergoes no subsequent transformation during or after transportation into storage. Thus, the electricity at issue before the court is used to transport a finished product from the treatment facility into storage to await distribution. MUD's contention, that the transportation of treated water constitutes either manufacturing or processing because without such transportation no additional raw water could be treated, fails. This contention fails to take into account § 089.02A(1).

Under § 089.02A(1), the mere transportation of treated water from MUD's treatment facilities into storage constitutes neither manufacturing nor processing because the treated water undergoes no substantive change in state, quality, form, property, or thing after it has been converted from raw sewage. Accordingly, we find that the electricity MUD purchased and used in order to transport treated water from the Platte River Plant and the Florence Pumping Station into storage does not constitute "manufacturing" or "processing." The transportation of water from the Platte River and Florence treatment facilities involves the use of electricity to store treated water awaiting distribution. MUD's use of electricity for this purpose cannot qualify for an exemption from Nebraska sales tax under § 77-2704.13.

## CONCLUSION

MUD does not qualify for an exemption from state sales tax under § 77-2704.13 because the electricity purchased and used

by MUD to transport treated water from MUD's treatment facilities into storage does not constitute manufacturing or processing. The district court did not err in so holding.

AFFIRMED.